1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARIJA PAUNOVIC, DUSAN PAUNOVIC, | CASE NO. C21-884 MJP |
| Plaintiffs, | ORDER DENYING MOTION TO TRANSFER VENUE |
| v. | |
| OBI SEAFOODS LLC, OCEAN BEAUTY SEAFOODS LLC, | |
| Defendants. | |

This matter comes before the Court on Defendants' Motion to Transfer Venue. (Dkt. No. 20.) Having reviewed the Motion, Plaintiffs' Opposition (Dkt. No. 23), the Reply (Dkt. No. 25), and all supporting materials, the Court DENIES the Motion.

**BACKGROUND**

Marija and Dusan Paunovic bring claims under the Fair Labor Standards Act and the Alaska Wage and Hour Act against their former employers OBI Seafoods LLC and Ocean Beauty Seafoods LLC. (Complaint ¶ 1 (Dkt. No. 1-1).) Plaintiffs allege Defendants have

1    knowingly and improperly delayed payment of wages due for their work as seasonal fish

2    processors in Alaska. (Id. ¶¶ 1-2.) Plaintiffs also allege that OBI failed to pay minimum wage

3    when they were subject to quarantine procedures during the 2020 fish processing season. (Id. ¶

4    3.) Plaintiffs pursue individual claims and both collective and class claims. (Id. ¶¶ 49-108.)

5    Plaintiffs claim that Defendants violated the FLSA and Alaska law by failing to pay on a bi-

6    weekly basis. (Id. ¶¶ 49-69, 82-101.) Plaintiffs also claim Defendants violated Alaska law by

7    failing to pay minimum wage for the time spent in quarantine. (Id. ¶¶ 70-81, 102-108.)

8         Defendants now seek to transfer this action to Alaska under 28 U.S.C. § 1404(a). (Mot. at

9    1 (Dkt. No. 20).) The Court reviews the facts that relevant to that request.

10        Plaintiffs reside in Serbia and have worked in Alaska as fish processors on H-2B work

11   visas. (Compl. ¶¶ 6-7, 15-16, 18.) In 2019, Marija Paunovic worked for Ocean Beauty and

12   alleges that she was paid only once at the end of the six-week processing season. (Id. ¶¶ 19-20.)

13   After being hired to work for the 2020 processing season, both Plaintiffs traveled to Seattle in

14   June 2020, where they spent two days in quarantine before traveling to OBI's processing facility

15   in Naknek, Alaska. (Id. ¶¶ 21-22.) Upon arrival in Alaska, Plaintiffs signed employment

16   contracts with OBI and were placed into quarantine. (Id. ¶¶ 23-27.) Near the end of their

17   quarantine, Plaintiffs tested positive for COVID-19 and were placed in further quarantine. (Id. ¶¶

18   33-36.) In total, Plaintiffs spent 29 days in quarantine. (Id. ¶ 37.) They were paid only $75 for

19   each of the 29 days in quarantine, and they received payment more than a month after they

20   started work. (Id. ¶¶ 38-39.)

21        Both Defendants are Washington limited liability companies who have their principal

22   offices in Seattle, Washington. (Exs. A & B to the Declaration of Toby Marshall (Dkt. Nos. 24-1

23   and 24-2).) Defendants operate fish processing facilities in Alaska, with a peak season running

24

1   from May to August. (See Declaration of Tony Ross ¶¶ 2, 8 (Dkt. No. 21).) Defendants'

2   corporate staff and executives that work out of the Seattle offices "regularly travel[] to Alaska to

3   oversee or attend to operations." (Id. ¶ 9.) Defendants aver that "between 2018 and 2021, all

4   timekeeping and payroll was created and processed in Alaska" and that most checks were cut

5   and delivered in Alaska. (Id.) Defendants claim of the 38 potential witnesses they have self-

6   identified, more than one-third reside in Alaska, and "almost all [] work in Alaska close to half to

7   the year." (Id. ¶ 12.) Defendants concede that some of these 38 witnesses are residents of

8   Washington "part of the year." (Id.) Defendants assert that conducting discovery and trial in

9   Alaska would greatly limit the disruption to their time-sensitive fish processing activities. (Id. ¶¶

10  13-14.)

11          In response, Plaintiffs argue that the "core legal dispute" concerns Defendants' policies

12  and practices concerning the timing of payment and the classification of compensable work, and

13  that the individuals with knowledge of and responsibility for setting these policies reside in

14  Washington. (Opp. at 4 (Dkt. No. 23).) Defendants' initial disclosures identify several corporate

15  officers and executives as the policymakers with knowledge of these policies, rules, and

16  procedures. (See Opp. at Defs.' Initial Disclosures at 4-5 (Dkt. No. 24-3); Plaintiffs' Initial

17  Disclosures at 2-3 (Dkt. No. 24-4).) This includes Tony Ross, Defendants' Chief Financial

18  Officer, Justin Mullins, OBI's vice president of human resources, and Kristopher Kraakma, HR

19  Director, Operations. (See Def. Init. Disc. at 4-6.) Ross signed a declaration in support of

20  Defendants' Motion in Seattle, and he admits that Defendants maintain corporate offices in

21  Seattle out of which an unidentified number of corporate staff and executives work. (Ross Decl.

22  ¶ 9.) Defendants have not identified any other corporate offices—only "administrative and

23  management offices at various locations in Alaska." (Id.) And Plaintiffs assert that the human

24

1   resources manager who communicated with Plaintiffs about their pay during quarantine, Donna

2   Kees, resides in Washington. (Opp. at 3 (Dkt. No. 23); Marshall Decl. ¶¶ 2-3, 6.) Lastly,

3   Plaintiffs note that most of the witnesses Defendants have identified are not on Plaintiffs' list of

4   relevant witnesses and would offer "redundant testimony on marginal issues." (Opp. at 4.)

**ANALYSIS**

**A.    Legal Standards**

7          Under section 1404(a), the court "may transfer any civil action to any other district or

8   division where it might have been brought" for "the convenience of parties and witnesses, in the

9   interest of justice." 28 U.S.C. § 1404(a). "Under § 1404(a), the district court has discretion 'to

10  adjudicate motions for transfer according to an 'individualized, case-by-case consideration of

11  convenience and fairness." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000)

12  (citation omitted). The court "may consider: (1) the location where the relevant agreements were

13  negotiated and executed, (2) the state that is most familiar with the governing law, (3) the

14  plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts

15  relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of

16  litigation in the two forums, (7) the availability of compulsory process to compel attendance of

17  unwilling non-party witnesses, and (8) the ease of access to sources of proof." Id. at 498-99.

**B.    The Court's Assessment of the Jones Factors**

19         The Court reviews the Jones factors to determine whether transfer under Section 1404(a)

20  is appropriate. The Court's review leads it to conclude that transfer is not warranted.

**1.    Location where the relevant agreements were negotiated and executed**

22         The location of the relevant agreements weighs slightly in Defendants' favor. Plaintiffs

23  applied and agreed to work for Defendants as fish processors in Alaska while they were still in

1    Serbia—not Washington or Alaska. (Ross Decl. ¶¶ 3-6.) The location of Defendants' employees

2    involved in any employment-related negotiations or the location of the Defendants' employees

3    who applied Plaintiffs' H-2B visas is not evident in the record. It is likely that the individuals

4    involved were located in Seattle at Defendants' headquarters, but the record is not clear on this

5    narrow issue. In contrast, Plaintiffs admit they signed employment agreements in 2020 in Alaska

6    after their arrival. (Compl. ¶ 23.) The same cannot be said of any agreement that Marija

7    Paunovic signed in 2019, as neither party suggests she signed any agreement. Ultimately, on this

8    limited record, this factor leans gently towards Alaska being the more relevant contact, though

9    Defendants' corporate offices in Seattle likely have some connection to the contracting process.

10          **2.      State that is most familiar with the governing law**

11          The Court most likely familiar with the law at issue is the District Court of Alaska.

12   Plaintiffs bring some claims under the Alaska Wage and Hour Act. The District Court of Alaska

13   is likely more familiar with the Alaska Wage and Hour Act than this Court. The Court

14   acknowledges, though, that Alaska's Supreme Court has referred to and employed the Ninth

15   Circuit's FLSA jurisprudence to resolve questions under the Alaska Wage and Hour Act. See Air

16   Logistics of Alaska, Inc. v. Throop, 181 P.3d 1084, 1090-91 (using the Ninth Circuit's FLSA

17   case law to interpret determine whether employee time was compensable under the AWHA).

18   This tempers somewhat the District Court of Alaska's greater familiarity with Alaska law. But to

19   the extent that this case presents novel issues under Alaska law, the Court believes that the

20   District Court of Alaska may be better placed to resolve those issues. But Plaintiffs also bring

21   claims under the FLSA. Both this Court and the District Court of Alaska will be equal familiar

22   with this law. On balance, this factor weighs slightly in Defendants' favor.

23

24

**3.    Plaintiffs' choice of forum and the Parties' relevant contacts with the forum**

The Court finds that Plaintiffs' choice of forum, the Parties' contacts with the forum, and the importance of those contacts in relation to the legal and factual issues of the case strongly disfavor transfer.

The Ninth Circuit has held that "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." Decker, 805 F.2d at 843. Defendants argue that the Ninth Circuit did not "adopt th[is] more burdensome standard," which arises out of forum non conveniens considerations. (Reply at 2.) Even if the Court accepts Defendants' argument that they need not make a "strong showing," they must still show good cause and overcome a general presumption in favor of plaintiff's choice of forum. Indeed, Defendants concede that "Plaintiffs' choice in venue is an important factor." (Mot. at 12.) To resolve a motion to transfer, the Court must "balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum." Decker, 805 F.2d at 843. As part of this consideration, the Court recognizes that "a foreign plaintiff's [forum] choice deserves less deference' than the forum choice of a domestic plaintiff." Ravelo Monegro v. Rosa, 211 F.3d 509, 514 (9th Cir. 2000) (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256 (1981)).

Plaintiffs identify several important Washington-related connections that are central to this dispute and which strongly favor Plaintiffs' chosen forum—Washington. Defendants' policies, procedures, and decisions to delay payments and not pay minimum wage to workers in quarantine are the focus of this case, not the specific working or quarantine conditions in Alaska. Plaintiffs convincingly argue that the decisions and policies affecting the timing and classification of payment were likely developed and implemented by Defendants at their corporate headquarters in Seattle. This is evident in Defendants' initial disclosures, which

1   identify their CFO, a Vice President of Human Resources, and an HR Director as having

2   "personal knowledge and discoverable information relating to the Defendants' operations,

3   policies and procedures, and pay practices." (Dkt. No. 24-3 at 4-6.) Plaintiffs assert that these

4   individuals work out of Defendants' corporate headquarters in Seattle, and Defendants appear to

5   concede this point by failing to dispute Plaintiffs' assertion in their Reply. (See Reply at 3-7.) So

6   while Plaintiffs are Serbian nationals who worked in Alaska for Defendants, the moving forces

7   behind the alleged violations of federal and Alaskan law appear to have substantial ties to

8   Washington, which is also Plaintiffs' chosen forum and the location of Defendants' corporate

9   offices. This strongly counsels against transfer, given that the Parties' contacts with the chosen

10  forum are substantial and not merely the reflection of the whim of counsel. All of these Jones

11  factors weigh strongly against transfer.

12      **4.      Differences in the costs of litigation in the two forums and the burdens**

13          The Court finds that the difference in the cost of litigating this case remains neutral.

14  While the Court recognizes that some of the witnesses reside in Alaska or work there part of the

15  year, the Court also recognizes that many of the key witnesses appear to work or reside in

16  Washington, the location of Defendants' corporate offices. If this case is transferred to Alaska,

17  the cost of depositions will likely be the same as the costs of conducting depositions in

18  Washington. And on this point, the Court encourages the Parties to use videoconferencing to

19  conduct depositions and save on expense and disruption. The Court is also unconvinced that the

20  location of counsel evidences any burden that justifies transfer. The relative costs of travel if this

21  case remains or is transferred to Alaska would likely be the same for both sides—only the party

22  bearing that cost would shift. This does not evidence a meaningful difference in cost that could

23  be avoided by transfer. This factor is neutral.

24

Similarly, the Court does not believe that the relative caseloads within this District and the District of Alaska weigh in favor of transfer. The Court has already set trial for this case for next December and remains ready to resolve all disputes in a timely manner consistent with the case schedule to avoid any delay. This weighs against transfer.

### 5. The availability of compulsory process to compel attendance of unwilling non-party witnesses

Defendants do not identify any concern about compelling non-party witnesses, and have waived any argument that this factor weighs in favor of transfer.

### 6. The ease of access to sources of proof

Without citing to any evidence, Defendants declare that the "majority of evidence that could be used to support or undermine Plaintiff's [sic] claims comes from Alaska or relates to operations occurring in Alaska." (Mot. at 17.) The Court cannot assess this statement in a vacuum and questions its accuracy. Defendants' CFO states that "Defendants have administrative management offices and staff at various locations in Alaska and documents are created and maintained in those offices." (Ross Decl. ¶ 9.) But he does not state what documents might be in Alaska or their relevance to this action. In addition, Ross states that "between 2018 and 2021, all timekeeping and payroll was created and processed in Alaska." (Id.) But he does not state where timekeeping and payroll data might be kept. At the same time, Ross states that he reviewed "personnel records" about Plaintiffs, without mentioning where these records are kept or identifying any burden in finding them from Seattle where he signed his declaration. (Id. ¶¶ 5-6.) As explained above, Plaintiffs' claims focus on Defendants' corporate policies and procedures as to calculating compensable time and issuing payroll, which will most likely require production of evidence kept at Defendants' corporate headquarters in Seattle. Defendants have not convinced the Court that this factor favors transfer.

7. **Inconvenience**

Defendants suggest that the "most important factor" in its analysis is the burden on non-party witnesses. (Mot. at 13-14.) This is not entirely accurate. Defendants cite to two cases for the proposition that "[t]he relative convenience to the witnesses if often recognized as the most important factor" in the Section 1404(a) analysis. (Mot. at 13 (citing State St. Cap. Corp. v. Dente, 855 F. Supp. 192, 197 (S.D. Tex. 1994); Saleh v. Titan Corp., 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005). But this statement does not track any Ninth Circuit authority, and it ultimately did not guide the conclusions reached in both Dente and Saleh. Both of those cases clarify that "it is the convenience of non-party witnesses, rather than that of party witnesses, that is the more important factor and is accorded greater weight in a transfer of venue analysis." Dente, 855 F. Supp. at 198 (emphasis added); Saleh, 361 F. Supp. 2d at 1160 ("Importantly, [w]hile the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor." (citation and quotation omitted) (emphasis added)). In other words, the Court is to give more weight to the convenience of non-party witnesses as compared to party witnesses, without concluding that non-party witness inconvenience is the most important Jones factor. And in so doing, "the court must consider not simply how many witnesses each side has and the location of each, but, rather, . . . the importance of the witnesses." Saleh, 361 F. Supp. 2d at 1161.

The Court is not convinced that the comparative inconvenience to non-party witnesses weighs in favor of transfer. Defendants maintain a corporate headquarters in Seattle, and it appears that the corporate staff and executives who work there will provide the most important testimony concerning the policies at issue in this case. While there are likely to be witnesses located in Alaska, Defendants have not identified which of these individuals are necessary to

1  sustain their defenses or Plaintiffs' claims or which are non-party witnesses. And while the Court

2  is aware that the peak fish processing season can make it difficult for employees to spare time to

3  sit for a deposition, the Court finds that this disruption would occur even if this case were

4  transferred to Alaska. And to avoid such disruption, the Parties should consider the use of

5  videoconferencing to conduct depositions remotely to avoid travel for any witnesses. The Court

6  also notes that it has scheduled a bench trial for this case in December 2022, which is well

7  outside of the peak fish processing season. The Court does not believe Defendants have

8  identified sufficient issues of inconvenience beyond those that are always part of litigation to

9  warrant transfer.

10      **8.      Interest of Fairness**

11          Citing to a dissenting Ninth Circuit opinion, Defendants argue they may be deprived of a

12  fair trial if this case remains in Washington because this Court's "background [is] so different

13  from the court" in Alaska. (Mot. at 10.) Defendants contend that they will receive a fair trial in

14  Alaska because a court there will be more familiar with the fish processing industry as well as

15  Alaska's geography, COVID-19 mandates, and wage and hour laws. (Id. at 10-11.) This

16  argument is not well taken. Any finder of fact must limit its decision to the evidence presented

17  and admitted at trial. A fact finder cannot rely on "familiarity." Doing so would be deeply

18  improper. What Defendants ultimately ask for is a partial fact finder who might decide the merits

19  of this case by reference to their preconceived conclusions or understanding about the issues

20  involved in this case without limiting their decision to the admissible evidence. By keeping this

21  case in Washington, the Court will insulate against that possibility and ensure a resolution with

22  an impartial fact finder. Allowing this case to proceed in Washington will not deprive

23  Defendants of any right to a fair trial.

24

# CONCLUSION

The Court finds that the <u>Jones</u> factors weigh against Defendants' request to transfer. While this case undoubtedly involves legal and factual issues related to Alaska, the key witnesses on the core legal issues have substantial contacts with Washington, where Defendants are headquartered and where Plaintiffs' chose to file this lawsuit. While there could be some inconvenience to some witnesses who reside in Alaska by keeping this case here, there would undoubtedly be inconveniences to those who do not reside there if the case were transferred. Defendants have failed to show good cause sufficient to warrant transfer, and the Court DENIES the Motion.

The clerk is ordered to provide copies of this order to all counsel.

Dated December 27, 2021.

Marsha J. Pechman
United States Senior District Judge