1

2

3

4

5

6

7

8

The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

| | |
|---|---|
| MARIJA PAUNOVIC and DUSAN PAUNOVIC, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>OBI SEAFOODS LLC, an Alaska corporation, and OCEAN BEAUTY SEAFOODS LLC, an Alaska corporation,<br><br>Defendants. | Case No. 2:21-cv-00884-MJP<br><br>**DEFENDANTS' OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION, JUDICIAL NOTICE AND EQUITABLE TOLLING** |

16

17

18

19

20

21

22

23

24

25

26

## I.     INTRODUCTION

Plaintiffs allege that they, and other "fish processing workers" were not paid in a timely manner by Defendants, OBI Seafoods LLC and Ocean Beauty Seafoods LLC (hereinafter "Defendants"). Relying solely on generic and conclusory statements contained in their Complaint, Plaintiffs now seek to dramatically alter the scope of this case. Specifically, Plaintiffs ask this Court to conditionally certify this case as a nationwide Fair Labor Standards Act ("FLSA") collective action, and to authorize notice to all "fish processing workers" worldwide.

As discussed in detail below, Plaintiffs' Motion must be denied because Plaintiffs have failed to meet their burden of proving that conditional certification of a FLSA collective action is

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

appropriate in this case. In particular, Plaintiffs' Motion is defective because Plaintiffs provide no details, explanation, or evidence that they are similarly situated to any putative collective member. Plaintiffs merely rely on the unsupported allegations of their Complaint. Other than the self-serving allegations of the Complaint, Plaintiffs offer no evidence the alleged pay practices experienced by Plaintiffs occurred on a regular basis, or that they were experienced by any other putative collective member. These paltry allegations are legally insufficient to establish that all "fish processing workers" employed by either of the Defendants for a more than three-year period of time are "similarly situated". Given these fundamental defects, the Court should deny Plaintiffs' Motion.

## II.     STATEMENT OF FACTS

### A.     Defendants Are Separate and Distinct Legal Entities With Various Pay Practices.

Defendants are separate and distinct legal entities and did not jointly employ Plaintiffs in June 2020 and do not jointly own or operate seafood processing plants. They certainly have not both been owning and operating the 10 fish processing plants in Alaska at issue in this litigation (the "Fish Processing Plants") for period alleged by Plaintiffs (2018 – present).  February 11, 2022 Declaration of Tony Ross (Ross Decl.), ¶7. Instead, Defendants have respectively owned and/or operated various seafood processing plants in Alaska.   Since the early 1900s, Ocean Beauty Seafoods has operated fish processing plants in Alaska. Dkt. 21, ¶2. In 2018 and 2019, Ocean Beauty Seafoods operated ten fish processing plants in Alaska and approximately 1,400 employees worked at those plants. *Id.* In 2020, OBI Seafoods took over the operation of some of Ocean Beauty Seafoods processing plants in Alaska. *Id.* Even after OBI Seafoods began operating some of the Fish Processing Plants in 2020, OBI Seafoods was not the employer of the workers at those plants. Ross Decl., ¶3. OBI Seafoods leased the approximately 1,500 workers from Ocean Beauty in 2020.

**DEFENDANTS' OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION, JUDICIAL NOTICE AND EQUITABLE TOLLING** - 2
Paunovic v. OBI Seafoods, et al.; Case No. 2:21-cv-00884-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

*Id.* In other words, in 2018 – 2020, Ocean Beauty was the only one of the Defendants that employed any of the employees at working at the Fish Processing Plants.  OBI Seafoods had no employees working at the Fish Processing Plants between 2018 – 2020. *Id.*, ¶4. In 2021, OBI Seafoods was the only one of the Defendants that employed any of the employees at the Fish Processing Plants.  Ocean Beauty had no employees working at the Fish Processing Plants in 2021. *Id.*, ¶5. Not all workers at the plants were H-2B Visa workers and not all workers worked as fish processors. *Id*., ¶7.  The individuals that worked at the Fish Processing Plants between 2018 and 2021 came from Alaska, other parts of the United States and foreign countries. Dkt. No. 21, ¶2. Workers hired through the H-2B Visa program were hired with the assistance of third-party agency and had different employment terms and conditions than non-Visa workers including, not limited to, terms related to pay. *See generally*, Dkt. 1, 9, 24-3 and 28 at 5. The number of H-2B Visa workers working at each of the Fish Processing Plants and the percentage of the workforce they represented varies from plant to plant and year to year.  Ross Decl., ¶6.  As an example, there were no H-2B Visa workers at Excursion Inlet plant in 2018 – 2020. *Id.*  Not all non-exempt workers at the Fish Processing Plants between 2018 and present are fish processers. *Id.,* ¶7.  There are other non-exempt positions at each plant. *Id.*

The payroll practices followed by the Defendants has also not been consistent across time and the same at all the Fish Processing Plants. *Id.,* ¶8.  Despite the Plaintiffs assertions otherwise, all employees that worked at the Fish Processing Plants were not subjected to the same payroll practices during their entire employment irrespective of where they worked or which of the Defendants employed them. *Id.* Since 2018 until the present time, Ocean Beauty has had different payroll processes and payment schedules for its employees working at the Fish Processing Plants. *Id.*, ¶9.  There has not been one universal payroll process for all of the Fish Processing Plants operated by Ocean Beauty since 2018. *Id.* Since 2018 until the present time, payroll for Ocean Beauty employees at some of the Fish Processing Plants has been processed on a bi-weekly basis for certain periods of time and processed on a less frequent basis at some of the plants for other

DEFENDANTS' OPPOSITION TO MOTION FOR CONDITIONAL
CERTIFICATION, JUDICIAL NOTICE AND EQUITABLE TOLLING - 3
Paunovic v. OBI Seafoods, et al.; Case No. 2:21-cv-00884-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

periods of time. *Id.,*¶10.  Since 2020 until the present time, the payroll processed for OBI Seafoods employees working at the Fish Processing Plants has been processed on a bi-weekly basis at some plants and at certain times processed on a less frequent basis at some other plants. *Id.*, ¶11.  For example, the payroll for those individuals working at the Kodiak plant have always been processed on a bi-weekly basis since 2018.  *Id.*, ¶12. But payroll at the Naknek plant was sometimes processed less-frequently in 2018 – 2020 and part of 2021.  *Id.* Only three of the Fish Processing Plants have not had consistent bi-weekly payroll since 2018 (Naknek, Alitak and Excusion Inlet) and in 2020, only one plant (Naknek) had anything other than bi-weekly payroll.  *Id.*, ¶13.

Since 2018, the length of the season worked by employees at each of the respective Fish Processing Plants has varied depending upon a variety of factors including: location, type of fish processed, fish count and restrictions for that year and weather. *Id.*, ¶14.  The start and stop date of a season impacted the payroll schedule for that plant. *Id.* When a person began work, how long a person worked and how many different plants they worked (it was not uncommon for a person to work at more than one plant in a season) also impacted when they received payroll. *Id.*, ¶15. For example, someone who was hired mid-week and only stayed on site for a week may have received their paycheck within a few days of their last day worked. *Id.*  Another worker could have received his/her paycheck within two weeks of the dates worked and another paycheck within less or more time. *Id.* Another worker could be paid bi-weekly at one plant, switch plants and receive their next paycheck one week later or three weeks later.  One worker could be paid bi-weekly at one plant, switch plants and receive their next paycheck one week later or three weeks later. *Id.* As a result of the COVID-19 government mandated quarantine for individuals entering the State of Alaska during certain periods of time in 2020 (see Dkt. 26-1 – 26-3), some individuals who were hired to work for Ocean Beauty did not go to work right away and as such, did not earn a paycheck their first days or weeks of employment.  *Id.*, ¶16.  Some started work and then returned to quarantine after a COVID-19 exposure. *Id.*  While in quarantine these individuals received stipend payments (instead of paychecks) until they met the government mandated quarantine requirements and/or

**DEFENDANTS' OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION, JUDICIAL NOTICE AND EQUITABLE TOLLING -** 4
Paunovic v. OBI Seafoods, et al.; Case No. 2:21-cv-00884-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

were otherwise cleared to work under local government protocols and health care guidelines. *Id.* Because of the unique circumstances surrounding COVID-19 and the government mandates and travel restrictions, some individuals that were hired to work the 2020 season came to Alaska but did not actually work as fish processors. *Id.* Others worked only some of the season. Depending on when they arrived and where they worked, some worked less than 6 weeks. *Id.*

Because of the differences in the legal entities, the different plant locations, different season lengths, changes in payroll practices over time and the individual circumstances applicable to each person, including what position they held, a person that worked for Ocean Beauty in 2018 at one of the Fish Processing Plants was not necessarily paid on the same schedule as a person that worked as an Ocean Beauty leased employee working at an OBI Seafoods operated plant in 2020. *Id.,*¶17. There are too many factors that influence the pay practices for each employee of either of the Defendants since 2018 to conclude that all individuals that worked for either of the Defendants at any of the Fish Processing Plant had the same or substantially similar payroll schedule or pay practices. *Id.*, ¶18. A review of an employee's payroll records and personnel file would be necessary to confirm the payroll terms and payroll schedule that applied to that employee's term of employment. *Id.*, ¶19.

### B.    Plaintiffs' History and History With Defendants.

Plaintiff Marija Paunovic worked for Ocean Beauty Seafoods for approximately three months in 2019 as a fish processer in Alaska. *See* Complaint, ¶6. She re-applied for employment with Ocean Beauty for the 2020 season and was offered and accepted employment at an OBI Seafoods operated plant in Alaska. Dkt. 21 at ¶4. Her husband Plaintiff Dusan Paunovic also applied for, was offered and accepted employment with Ocean Beauty at an OBI Seafoods operated plant in Alaska for the 2020 season. *Id.*, ¶5.

**DEFENDANTS' OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION, JUDICIAL NOTICE AND EQUITABLE TOLLING** - 5
Paunovic v. OBI Seafoods, et al.; Case No. 2:21-cv-00884-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

According to her personnel file, when Plaintiff Maria Paunovic worked for Ocean Beauty Seafoods in 2019, she was a resident of Serbia and came to work in Alaska under a U.S. H2B Visa. *Id.,* ¶4. And, when both plaintiffs applied for accepted and ultimately reported to work in 2020, they were and as Defendants understand, remain residents of Serbia. *Id.*, ¶6.

Prior to Plaintiffs' arrival in Alaska for the 2020 season, Alaska Governor Michael J. Dunleavy issued a COVID-19 Health Mandate requiring anyone arriving from another state or country to quarantine for 14 days. Dkt. 26-1 at 1-2. As a result of Plaintiffs' own conduct, including, but not limited, their violation of health care provider directives, governmental mandates, and protocols in place to minimize the spread of COVID, employment was terminated before they actually worked as fish processors for OBI Seafoods. Dkt. 9 at ₱34.

### C.    Plaintiffs Are Not Similarly Situated To The Putative Collective Members.

Plaintiffs have made a number of false assumptions throughout their Motion for Conditional Certification in an attempt to justify lumping the thousands of putative collective members together as similarly situated. First, Plaintiffs have erroneously assumed that both Defendants employed each and every worker at the Fish Processing Plants between 2018 and present. Defendants did not jointly employ Plaintiffs. OBI Seafoods was not even involved in the Fish Processing Plants in 2018 and 2019. The terms of any employment agreement with the Plaintiffs and any putative collective member will vary widely depending on which of the Defendants is involved, which plant is involved, how/when the individual was hired.

Second, Plaintiffs inappropriately take the position that "anyone hired [by either Defendant] to perform fish processing work (and not just those who actually performed such work)" at any of the Fish Processing Plants and those hired as "fish processors" at any of the plants

**DEFENDANTS' OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION, JUDICIAL NOTICE AND EQUITABLE TOLLING - 6**
Paunovic v. OBI Seafoods, et al.; Case No. 2:21-cv-00884-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

are the same. Dkt. 28 at 2, n. 1 and 4. Each of the First Processing Plants had their own staffing and pay practices. Ross Decl., ¶9. And, not all hired actually worked. *Id.* ¶16. Additionally, "fish processing work" could encompass multiple job duties and job titles. For example, office personnel ordering supplies, making phone calls, filing paperwork, performing maintenance, etc., could be considered involved in the "fish processing work," but do not perform the same duties as "fish processors."

Third, Plaintiffs erroneously assume that "[m]any or all of Defendants' seasonal employees are H-2B temporary workers who live outside of the United States" and suggest that as a result, anyone who has worked for either Defendant has the same rights and potential claims (such as a claim to be paid every two weeks). *Id*. at 4. Defendants have respectively employed thousands of individuals since 2018, and although some of these individuals are H-2B temporary workers, there are also many individuals who come from Alaska, and other parts of the United States. Dkt. 21 at ¶2. The pay terms that applied or apply to each person and whether they have a potential FSLA claim requires an analysis beyond whether or not they worked for one of the Defendants. Contrary to Plaintiffs' contention, the FLSA does not require that the payment of wages occur every two weeks. *See Browne v. P.A.M. Transp., Inc*., 434 F. Supp. 3d 712, 726 (W.D. Ark. 2020) (finding the FLSA does not require a specific frequency of pay, so an employer is free to set his own regular pay day intervals). If Plaintiffs are taking the position that H-2B workers were entitled to pay every two weeks, then any conditional certification sought should be limited to only those workers. But that is not what Plaintiffs' Motion seeks. Instead, Plaintiffs request conditional certification for *all* "fish processing workers" that worked for either Defendant at any time between 2018 – present. There simply is no basis for the Plaintiffs' unduly and unreasonable broad request.

DEFENDANTS' OPPOSITION TO MOTION FOR CONDITIONAL
CERTIFICATION, JUDICIAL NOTICE AND EQUITABLE TOLLING - 7
Paunovic v. OBI Seafoods, et al.; Case No. 2:21-cv-00884-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

Their individual employment terms, employer, place of employment and dates of pay must be reviewed.

Lastly, Plaintiffs erroneously assume that Defendants forced Plaintiffs and others who were hired in 2020 to undergo quarantine solely to benefit the Defendants and as a result, time spent in quarantining is compensable. Dkt. No. 28 at 5. Defendants did not impose a quarantine requirement on anyone; the quarantine requirement was imposed by the Alaska state government on anyone arriving in the state of Alaska to perform work from other states or countries. Dkt. No. 26-1 at 1-2. Furthermore, Defendants did not "force" Plaintiffs to quarantine in employer provided housing. Plaintiffs and all others who were hired to work during the 2020 fishing season could have chosen to forego travel to Alaska, and thus, the requirement to quarantine. Additionally, so long as the quarantine requirements mandated by the Alaska government were followed, all individuals were free to spend their days in the quarantine designated area however they chose on personal pursuits, the time in quarantine is not compensable. Some, like the Plaintiffs, spent more time in quarantine than others due to their own conduct (willful and/or unreasonable behavior that caused COVID-related exposures). Given these nuances, Plaintiffs cannot use the fact that some workers spent time in quarantine in 2020 as an example of commonality. And they certainly cannot establish that all time spent in quarantine was compensable.

## III.    ARGUMENT AND AUTHORITY

### D.    Authorization of Notice Under the FLSA Is Discretionary and Should Only Be Granted In Appropriate Cases.

Generally, "litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). The FLSA provides a limited exception, under which the Court *may* allow named plaintiffs to sue for other individuals only if they first

**DEFENDANTS' OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION, JUDICIAL NOTICE AND EQUITABLE TOLLING - 8**
Paunovic v. OBI Seafoods, et al.; Case No. 2:21-cv-00884-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

prove that they are "similarly situated." 29 U.S.C. § 216(b). However, the FLSA does not authorize the wholesale expansion that Plaintiffs seek here. *See Fetrow-Fix v. Harrah's Entm't, Inc.*, 2011 U.S. Dist. LEXIS 150116, at *19 (D. Nev. Dec. 30, 2011).

In *Hoffmann-La Roche, Inc. v. Sperling*, the Supreme Court explained that district courts "have discretion, *in appropriate cases* to implement" the collective action mechanism "by facilitating notice to potential plaintiffs" to permit "efficient resolution in one proceeding of *common issues* of law and fact arising from the same alleged [. . .] activity." 493 U.S. 165, 169-70 (1989) (emphasis added). Absent the requisite commonality, "it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse." *Horne v. United Servs. Auto. Ass'n*, 279 F. Supp. 2d 1231, 1234 (M.D. Ala. 2003). Thus, courts and litigants alike have a "responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." *Id.* at 1237. Where, as here, Plaintiffs seek conditional certification and court-authorized notice merely as a means of "asking the court to assist in [their] efforts to locate potential [p]laintiffs and thereby expand the scope of litigation," the request must be denied. *Fetrow-Fix*, 2011 U.S. Dist. LEXIS 150116, at *10.

The Court's power to grant or deny conditional certification stems from Federal Rule of Civil Procedure 83(b). *Hoffman La-Roche, Inc.*, 493 U.S. at 170-72 (discussing Rule 83 and how it "endorses measures to regulate the actions of the parties to a multiparty suit"). Rule 83(b) allows – but does not require – district courts to "regulate their practice in any manner not inconsistent with" the Federal Rules of Civil Procedure. 12 Charles Alan Wright *et al.*, Federal Practice and Procedure § 3155 (2014 & Supp. 2016). When proceeding under Rule 83(b), therefore, the Court must engage in "difficult, case-by-case adjudication." *Id.* at n. 2 (quoting Note, Rule 83 and the

**DEFENDANTS' OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION, JUDICIAL NOTICE AND EQUITABLE TOLLING - 9**
Paunovic v. OBI Seafoods, et al.; Case No. 2:21-cv-00884-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

Local Federal Rules, 67 Col. L. Rev. 1251 (1967)). Rule 83(b)'s power is not to be used promiscuously or formulaically, because the harms caused by an error would be significant. *See id.* As applied to conditional certification, the Court should use its power under Rule 83(b) *at its discretion. See Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 n.5 (3d Cir. 2011) (power to issue notice to collective is a matter committed to the Court's "broad discretion"). Because the present motion invokes the Court's broad discretion, there is no inflexible tenet dictating the outcome or methodology, and nothing requires the Court to grant conditional certification liberally, or stingily, or anywhere between. *See The Steamship Styria v. Morgan*, 186 U.S. 1, 9 (1902) ("The term 'discretion' implies the absence of a hard-and-fast rule. The establishment of a clearly defined rule of action would be the end of discretion.").

### E.    Even Under a Lenient Standard, Plaintiffs Cannot Meet Their Burden.

Plaintiffs ask the Court to apply a two-step approach in addressing their Motion. Dkt. 28 at 10. In so doing, Plaintiffs suggest that the Court is bound to apply a "lenient" standard, which generally leads to conditional certification. *Id.* at 10-12. Though Plaintiffs are correct that some courts have applied a two-step approach in appropriate cases, Plaintiffs are incorrect that such an approach should automatically lead to conditional certification here.

To the contrary, Courts have recognized "conditional certification at the first stage is by no means automatic," and "lenient" does not mean the absence of any standard. *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925 (D. Ariz. 2010); *see also Trinh v. JP Morgan Chase & Co.*, 2008 U.S. Dist. LEXIS 44016 (S.D. Cal. Apr. 22, 2008). Even under the so-called "lenient" first-stage standard, Plaintiffs bear the burden of establishing, based on "substantial allegations" that they are "similarly situated" to other putative class members - i.e., that together they are victims of a single

**DEFENDANTS' OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION, JUDICIAL NOTICE AND EQUITABLE TOLLING** - 10
Paunovic v. OBI Seafoods, et al.; Case No. 2:21-cv-00884-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

decision, policy, or plan. *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109; *Benson v. West Coast Constr.*, 2007 WL 445456, at *2 (W.D. Wash. Feb. 6, 2007). As the Ninth Circuit explained, "similarly situated" means "plaintiffs must be alike with regard to some material aspect of their litigation." *Id.* at 1114. "[W]hat matters is not just any similarity between party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiffs' claims, in the sense of having the potential to advance these claims, collectively, to some resolution." *Id.* at 1115.

Indeed, courts have denied motions for conditional certification where the plaintiffs did not satisfy their burden of establishing that the putative collective was similarly situated or that they were subjected to a common policy. *See, e.g., Emonds v. Amazon.com, Inc.*, 2020 WL5993908, *5 (W.D. Wa. October 9, 2020) (the court found while review is lenient for preliminary certification, Plaintiff's allegations must still be of a nature that shows the proposed collective to be similarly situated with regard to the alleged FLSA-violating behavior.); *Martinez v. Money Source, Inc.* 2020 WL 5289851 *3 (C.D. Cal. June 9, 2020) ("[e]ven accepting Plaintiff's allegations as true, she has still alleged nothing more than ad-hoc noncompliance with a facially lawful policy.").

Here, Plaintiffs have incorrectly interpreted the word "lenient" to mean they simply need to *ask* for conditional certification without presenting any supporting evidence that a collective action is appropriate. Notably, Plaintiffs have presented no evidence, or even substantial allegations that would support the contention that anyone and everyone hired to work for either of the Defendants between 2018 – present were subject to the same wage payment requirements or received their pay under the same payroll schedule. Plaintiffs make an overly simplistic plea to this Court that a conditional certification is appropriate because they believe all "fish processing

**DEFENDANTS' OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION, JUDICIAL NOTICE AND EQUITABLE TOLLING** - 11
Paunovic v. OBI Seafoods, et al.; Case No. 2:21-cv-00884-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

workers" were entitled to be paid wages every two weeks.  But there is no showing that all "fish processing workers" working for either of the Defendants were entitled to pay every two weeks or that they did not receive pay every two weeks.  Plaintiffs have not made such a showing because they cannot.  Without a showing Plaintiffs cannot meet their burden to prove that they are similarly situated to everyone they wish to include in the proposed collective for 2020 (the fishing season they were both hired to work) let alone for the longer time period of 2018 - present.  Case in point, neither of the Plaintiffs even worked for either of the Defendants in 2018 yet their present motion suggests they can represent a collective that spans back to 2018.

Defendants acknowledge that a two week pay period may be considered the default for H-2B workers (see 29 CFR 503.16(h)) but there is no indication that an alternative schedule cannot be contractually agreed upon and there is no legal authority for the assertion that all workers that worked at the Fish Proessing Plants since 2018 had a legal right to be paid every two weeks.  The FLSA does not require that the payment of wages occur every two weeks as Plaintiffs have alleged.  *See Browne*, 434 F. Supp. 3d at 726 (finding the FLSA does not require a specific frequency of pay, so an employer is free to set his own regular pay day intervals).  And, under Alaska wage and hour law, employees and their employers can agree to monthly or semi-monthly pay schedules. Alaska Statute 23.05.140.

Plaintiffs' failure to provide this Court with any evidence that there was a universal pay practice across the operations of both Defendants, all plants, all workers and all years inherently defeats Plaintiffs' current motion.  As equally dispositive of the Plaintiffs' motion is the fact they have not and cannot prove that they are similarly situated to all other – or even some - "fish processing workers" with respect to an alleged violation of the FLSA. *See Edmonds*, 2020 WL 5993908 *6. Plaintiffs have not even established that they are themselves similarly situated.

DEFENDANTS' OPPOSITION TO MOTION FOR CONDITIONAL
CERTIFICATION, JUDICIAL NOTICE AND EQUITABLE TOLLING - 12
Paunovic v. OBI Seafoods, et al.; Case No. 2:21-cv-00884-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1    Rather, the individual Plaintiffs are strikingly different.  Plaintiff Marija Paunovic worked for

2    Ocean Beauty in 2019 during which time she received paychecks for actual hours worked at an

3    Ocean Beauty operated plant as well received stipend payments in 2020 after she was hired by

4    Ocean Beauty to work at a plant operated by OBI Seafoods.  Plaintiff Dusan Paunovic on the other

5    hand only received stipend payments for his time in quarantine in 2020 after being hired by Ocean

6    Beauty to work at a plant operated by OBI Seafoods.  Thus, each of the Plaintiffs have different

7    theories for their claims and Defendants have different defenses to the same. The same

8    individualized analysis would need to be undertaken for each worker in 2018 and every year

9    thereafter and would turn on numerous factors including, their employment status, location of hire,

10   location of work, dates of employment, dates of pay, and so forth.

11            These considerations alone require the Court's denial of conditional certification in this

12   case.

13       **F.      Certification Should Be Denied Because Plaintiffs Have Not Shown That A
                   Nationwide Collective of "Fish Processing Workers" Are Similarly Situated.**

14            Even if a lenient standard is applied here, evaluating the critical issues of commonality,

15   economy, and efficiency, *see Hoffmann-La Roche, Inc.*, 493 U.S. 165, necessarily will require this

16   Court to examine the background and employment of each of "fish processing worker" to

17   determine whether they are similarly situated with respect to their wage payment provisions. *See*

18   *Bramble v. Wal-Mart Stores, Inc.*, 2011 U.S. Dist. LEXIS 39457, at *19 (E.D. Pa., Apr. 12, 2011);

19   *see also Dybach v. Florida Dep't of Corrections,* 942 F.2d 1562, 1567-68 (11th Cir.1991).

20   Plaintiffs' Complaint makes numerous erroneous assumptions in claiming that they are similarly

21   situated to the putative collective members in that they were all employed by both Defendants, all

22   were entitled to the same pay terms and all were paid on the same schedule. Instead, multiple

23   factual elements will require individual inquiries. For each of the putative collective members it

24   will need to first be determined if they are subject to any alleged requirement that they be paid

25   every two-weeks. Whether there is such an alleged requirement will depend on multiple factors,

26

**DEFENDANTS' OPPOSITION TO MOTION FOR CONDITIONAL
CERTIFICATION, JUDICIAL NOTICE AND EQUITABLE TOLLING** - 13
Paunovic v. OBI Seafoods, et al.; Case No. 2:21-cv-00884-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

such as whether they were working under an H-2B visa, whether they had different payment of wages terms in any applicable employment agreements, when they worked, whether their time spent during government mandated quarantine was compensable time, when they received their pay, what pay they received, what – if any – harm they incurred if pay was not timely, what defenses Defendants have to any viable claims they may have (including claims of setoff for stipends paid and housing, food and other benefits delivered during quarantine) and various related inquiries.

Courts refuse to permit FLSA suits to proceed as a collective action if individualized inquiries will eliminate "the economy of scale envisioned by the FLSA collective action procedure." *Holt*, 333 F. Supp. 2d at 1275.  In situations such as this where the record indicates that "fish processing workers" may be subject to employee agreements with different Defendants, the employee agreements may have differing terms regarding payment of wages, may or may not be working under a H-2B visa, may or may not have been entitled to any compensation for time spent in a government mandated quarantine, and so forth, courts have determined that "a collective action certified on the facts presented thus far would be mired in particularized determinations of liability and damages, rather than collective consideration of common questions of law and fact." *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002) (denying conditional certification where "factual differences" existed including different job sites and job titles); *Douglas*, 2014 U.S. Dist. LEXIS 94594, at *11 (denying conditional certification of one proposed class that spanned different clients and supervisors); *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 511 (M.D. La. 2005) (denying conditional certification where factual inquiries involved different managers at different locations nationwide). For all these reasons, the Court should deny Plaintiffs' motion.

**DEFENDANTS' OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION, JUDICIAL NOTICE AND EQUITABLE TOLLING** - 14
Paunovic v. OBI Seafoods, et al.; Case No. 2:21-cv-00884-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

**G.     The Putative Class Definition Creates an Amorphous Mass of Dissimilar Individuals.**

Additional manageability concerns plague Plaintiffs' request for certification of a collective action. Plaintiffs have sought to expand the definition of the putative collective members for the first time in their Motion for Conditional Certification. Dkt. 28 at n. 1. Their claims that such a change is minimal is disingenuous. Plaintiffs seek to expand their collective member definition to include "anyone hired to perform fish processing work" whether or not those individuals actually ever performed any such work, and removes any demographic limitation; thus, allowing putative collective members from around the globe. *Id.*  It also expands the scope to include those individuals that may have arrived at one of the Defendants' worksites but did not actually work (merely entered quarantine). *Id.* This expansive definition raises a number of manageability concerns.

First, Plaintiffs notably fail to clearly identify the type of worker for which they seek conditional certification, except for referencing them as "performing fish processing work." Dkt. 28 at 6. Such an undefined class is unmanageable as "performing fish processing work" could encompass a variety of different job positions and functions, including supervisors, managers, office workers, or any other employee involved in the performing of fish processing work. Such an amorphous, undefined and diverse group of individuals is not "similarly situated" and cannot provide the basis for an FLSA collective action.  *See Sheffield v. Orius Corp.*, 211 F.R.D. 411, 417 (D. Or. 2002) (denying conditional certification where "the plaintiffs have presented a vast universe of potential members of the class" and "the affidavits and declarations represent a much smaller set of injured workers").

Second, if the putative collective members have no requirement that they actually worked for Defendants, the putative collective members could include anyone Defendants ever offered employment to worldwide or simply paid a stipend while quarantining. Discovery regarding the hiring of the individuals, any subsequent contact between Defendants and the individual, and the

**DEFENDANTS' OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION, JUDICIAL NOTICE AND EQUITABLE TOLLING** - 15
Paunovic v. OBI Seafoods, et al.; Case No. 2:21-cv-00884-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

circumstances surrounding these individuals not performing work for Defendants would be required. *Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 824 (7th Cir. 2012) (finding that if "a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification."). For all these reasons, certification of a collective action in this case is inappropriate.

If, however, the Court determines conditional certification is appropriate, Defendants request the scope of the putative collective members to receive notice be appropriately limited to those individuals actually similar to Plaintiffs. Thus, the Defendants request notice only be given to:

> All current and former employees of Ocean Beauty Seafoods LLC who worked as a fish processor at the Nankek plant in June 2020 under a H-2B Visa and as part of their terms of employment it was agreed they would be paid wages earned every two weeks but they did not receive wages earned (excluding stipends for quarantining) on a two week schedule.

Any scope beyond the above-described proposed collective would be unreasonable and unsupported by applicable law.

### H.    The Court Should Reject Plaintiffs' Proposed Notice

The purpose of notice in a collective action is to notify individuals of the litigation once the putative class has been identified and is represented by an adequate class representative with a viable claim. *Simmons v. Valspar Corp.*, 2011 U.S. Dist. LEXIS 39340, at *18 (D. Minn. Apr. 11, 2011) (holding the "power to authorize notice is discretionary and should be exercised only in 'appropriate cases'—that is, in cases where the plaintiffs have made a threshold showing that they meet the criteria in § 216(b)"). "Consistent with this principle, courts have the responsibility to avoid 'stirring up' litigation through unwarranted solicitation." *Colson*, 687 F. Supp. 2d at 929-30; *see also Novick v. Shipcom Wireless, Inc.*, 2017 U.S. Dist. LEXIS 55699, at *15-18 (S.D. Tex. Apr. 12, 2017) (denying conditional certification and stating the court must ensure the collective

**DEFENDANTS' OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION, JUDICIAL NOTICE AND EQUITABLE TOLLING** - 16
Paunovic v. OBI Seafoods, et al.; Case No. 2:21-cv-00884-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1    process is "being used appropriately to promote judicial efficiency, rather than used as a tool to

2    burden a defendant and create settlement pressure").   As outlined above, Plaintiffs have not

3    identified a definitive collective let alone established they are adequate representatives for the

4    same. Neither of them even worked for either Defendant in 2018 or had any employment

5    relationship with either Defendant after 2020.

6         Should the Court nevertheless grant Plaintiffs' Motion and conditionally certify a collective

7    action, the Court has broad discretion to formulate the opt-in notice in order to ensure that the

8    litigation is conducted in an "orderly and sensible" manner and to ensure that putative class

9    members do not receive "misleading communications." *Hoffman-LaRoche*, 493 U.S. at 170 ("By

10   monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate,

11   and informative. Both the parties and the court benefit from settling disputes about the content of

12   the notice before it is distributed. This procedure may avoid the need to cancel consents obtained

13   in an improper manner."). To the extent that the Court grants Plaintiffs' Motion, Defendants'

14   object to Plaintiffs' proposed notice and consent form as discussed in detail below.

### 1.    Plaintiffs' Request To Send To Others Who Performed Fish Processing Work Worldwide Should Be Denied.

15
16

17        Plaintiffs request that the Court authorize notice not only to "fish processing workers" who

18   are from the United States, or Serbia (as Plaintiffs are), but anyone worldwide. Dkt. 28 at 6.

19   Plaintiffs have not made any allegations or submitted any evidence about individuals from the

20   United States, or other countries regarding the employment agreements they may have entered (if

21   any) and the terms regarding payment of wages that may have been included in those agreements,

22   and thus have not met their burden to establish that notice is appropriately sent to such a group. As

23   explained above, H-2B workers were hired through a different process and under different terms

24   than non-H-2B workers. Plaintiffs essentially conceded this fact. *See* Dkt. 28 at 5. And, not all of

25   the Fish Processing Plants employed H-2B workers. Yet, Plaintiffs now seek to lump all workers

26   at any of the Fish Processing Plants together irrespective of which of the Defendants they actually

**DEFENDANTS' OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION, JUDICIAL NOTICE AND EQUITABLE TOLLING** - 17
Paunovic v. OBI Seafoods, et al.; Case No. 2:21-cv-00884-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

worked for, which plant they worked at, which season they worked and/or what terms actually applied to their pay.  Moreover, Plaintiffs have failed to define what they mean by "fish processing workers," making it impossible for Defendants to comply with this nebulous request. To the extent the Court grants Plaintiffs' Motion, it should be limited to individuals who were in the same job title, classification, and hired for the same season through the same process/agent as Plaintiffs.

### 2. Plaintiffs' Proposed Notice Should Be Revised.

It is well-settled that FLSA notices must be fair, balanced, and accurate so that collective action members can make informed decisions about whether to participate. *See Labrie v. UPS Supply Chain Solutions, Inc.*, 2009 U.S. Dist. LEXIS 25210 (N.D. Cal. Mar. 18, 2009). While Plaintiffs' proposed notice ("the Notice"), *see* Dkt. No. 29-1, provides information about the recipient's rights and the potential for obtaining monetary recovery, it does not inform them about their corresponding responsibilities. Section 3 of the Notice should inform the recipients that they may be required to provide information or documents, participate in depositions, or testify at trial, and may share in liability for costs. *See id.* at *24-25. Section 3 of the Notice should also clarify that the individual is eligible to join if they "had an agreement with at least one of the Defendants that the payment of wages would occur every two weeks" and the notice should require them to identify which of the Defendants they assert to have had such an agreement and for what period of time. With respect to Section 5 of the Notice, the last sentence should be deleted because it is not necessary to inform individuals of their rights and, instead, encourages them to make a particular decision.

### 3. The Privacy Rights of The Collective Should Not Be Violated By Divulging Telephone Numbers And Social Security Numbers or Alien Registration Numbers.

The Court should not require Defendants to provide telephone numbers or social security numbers or alien registration numbers, as these are not necessary for sending notice. *See Taylor v. AutoZone, Inc.* 2011 U.S. Dist. LEXIS 55590, *16 (D. Ariz. 2011) ("[t]he production of addresses is appropriate, but in the interest of protecting class members' privacy, we will not order defendant

**DEFENDANTS' OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION, JUDICIAL NOTICE AND EQUITABLE TOLLING** - 18
Paunovic v. OBI Seafoods, et al.; Case No. 2:21-cv-00884-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

to provide telephone numbers and social security numbers...”). Numerous courts have denied access to telephone numbers at the notice stage, citing the risk of “improper solicitation” and the “needless intrusion into the privacy of these individuals and their families.” *See, e.g., Stickle v. SCI Western Market Support Center, L.P.*, 2009 U.S. Dist. LEXIS 97735 (D. Ariz. Sept. 30, 2009); *Parks v. Eastwood Ins. Services, Inc.*, 2002 U.S. Dist. LEXIS 23762 (C.D. Cal. July 29, 2002); *Arevalo v. D.J.’s Underground, Inc.*, 2010 U.S. Dist. LEXIS 64516 (D. Md. Oct. 13, 2010); *Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*, 2011 U.S. Dist. LEXIS 11275 (W.D. Pa. June 1, 2009). The putative collective members also have a privacy interest in their social security numbers or alien registration numbers, which the Court should not force Defendants to divulge. *See Bredbenner v. Liberty Travel, Inc.,* 2009 U.S. Dist. LEXIS 67122, 2009 WL 2391279, at *2 n. 3 (D.N.J. July 31, 2009); *Ritzer v. UBS Fin. Servs. Inc.,* 2008 U.S. Dist. LEXIS 71635 (D.N.J. Sept. 22, 2008). Therefore, the Court should not order Defendants to turn over this sensitive data to Plaintiffs’ counsel.

### 4.    Plaintiffs’ Proposed Reminder Notice Should Not Be Permitted.

Plaintiffs request for a “reminder” 30 days into the proposed notice period is unnecessary and should not be allowed. “In facilitating notice, the Court must avoid communicating to absent class members any encouragement to join the suit or any approval of the suit on its merits.” *Hoffman-La Roche Inc.,* 493 U.S. at 168-69. Courts should be hesitant to authorize duplicative notice because it may unnecessarily “stir up litigation” or improperly suggest the Court’s endorsement of plaintiff’s claims. *Id.* Numerous courts have denied similar requests for “reminder” notices. *See, e.g., Schroeder v. Humana Inc.*, 2012 U.S. Dist. LEXIS 168759 (E.D. Wis. Nov. 27, 2012); *Byard v. Verizon W. Va., Inc.*, 287 F.R.D. 365 (N.D. W. Va. Oct. 12, 2012); *Knipsel v. Chrysler Group L.L.C.*, 2012 U.S. Dist. LEXIS 21188 (E.D. Mich. Feb. 21, 2012); *Robinson v. Ryla Teleservices, Inc.*, 2011 U.S. Dist. LEXIS 147027 (S.D. Ala. Dec. 21, 2011); *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746 (N.D. Ill. 2010).

**DEFENDANTS’ OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION, JUDICIAL NOTICE AND EQUITABLE TOLLING** - 19
Paunovic v. OBI Seafoods, et al.; Case No. 2:21-cv-00884-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

### 5.    Defendants Should Be Given A Reasonable Amount of Time To Provide A Putative Class List.

Defendants object to Plaintiffs' request that it provide information about the potential collective action members within seven days, and instead requests that it be given 60 days. As described herein, the differences between the two legal entities, the number of plants, number of workers that have worked at the various plants since 2018 and the wide variety of circumstances applicable to each plant, season and employee will necessitate a significant amount of research which will take a substantial amount of time.  Under no circumstances could Defendants conduct the research necessary to generate a list in the seven days Plaintiffs request.

### I.    The Court Should Deny Plaintiffs' Request To Equitably Toll The Statute Of Limitations

Plaintiffs request to toll the statute of limitations from January 14, 2022 to the date of the Court's decision on this motion, and an additional fifty-five days should be denied. In the event that the Court grants Plaintiff's Motion, the Court should decline to further toll the limitations period for the FLSA collective because there has been no wrongful conduct by Defendants, nor extraordinary circumstances beyond Plaintiff's control, to support further tolling.

"Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999). Equitable tolling does not extend to "garden variety claims of excusable neglect, and courts have generally applied equitable relief only sparingly." *Cordray v. Cohn Restaurant Group, Inc.*, No. 17-CV-02375-GPC-NLS, 2018 WL 1382981, at *4, 2018 U.S. Dist. LEXIS 44804, at *10 (S.D. Cal. Mar. 19, 2018) (citing *Scholar v. Pac. Bell*, 963 F.2d 264, 267–68 (9th Cir. 1992)). Courts have routinely denied requests for equitable tolling in FLSA cases, where the plaintiffs have failed to show that the defendant engaged in any wrongful conduct, and/or failed to show that "extraordinary circumstances" beyond the plaintiffs' control made it impossible to file the claim on time. *See, e.g., Woods v. Vector Marketing Corp.*, 2015 WL 1198593 at *6 (N.D. Cal.

**DEFENDANTS' OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION, JUDICIAL NOTICE AND EQUITABLE TOLLING** - 20
Paunovic v. OBI Seafoods, et al.; Case No. 2:21-cv-00884-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

Mar. 16, 2015); *Ash v. Bayside Solutions, Inc.,* 2015 WL 427731 at *5 (N.D. Cal. Jan. 30, 2015); *Cranney v. Carriage Servs., Inc.,* 559 F.Supp.2d 1106, 1109 (D.Nev.2008). Furthermore, courts have consistently held that "good faith motion practice by a defendant does not amount to wrongful conduct warranting equitable tolling of FLSA claims." *Shaia v. Harvest Management Sub LLC*, 2015 WL 1744341, *3 (N.D. Cal. April 15, 2015). In the interest of not repeating their arguments against equitable tolling in this case, Defendant incorporate by reference the additional legal authority and facts previously briefed in support of an earlier motion. Dkt. 10. For the reasons outlined here as well as in the Defendants' previously briefing, the Court should deny Plaintiffs' request to equitably toll the statute of limitations.

## III.   CONCLUSION

Relying upon the facts and evidence outlined herein, Defendants respectfully request that the Court deny Plaintiffs' motion for conditional certification, court-authorized notice, and request to equitably toll the statute of limitations.

**DEFENDANTS' OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION, JUDICIAL NOTICE AND EQUITABLE TOLLING** - 21
Paunovic v. OBI Seafoods, et al.; Case No. 2:21-cv-00884-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1

Dated:  February 11, 2022

2

3
                                        s/Renea I. Saade
                                        Renea I. Saade, WSBA #30044
4                                       Alaska Bar No. 0911060
                                        rsaade@littler.com
5                                       LITTLER MENDELSON
                                        500 L Street, Suite 201
6                                       Anchorage, AK  99501
                                        Phone:      907.561.1214
7                                       Fax:         907.561.1215

8                                       Douglas E. Smith, WSBA #17319
                                        desmith@littler.com
9                                       LITTLER MENDELSON, P.C.
                                        One Union Square
10                                      600 University Street, Suite 3200
                                        Seattle, WA  98101.3122
11                                      Phone:       206.623.3300
                                        Fax:         206.447.6965
12

13                                      Attorneys for Defendants OBI Seafoods, LLC
                                        and Ocean Beauty Seafoods LLC
14

15

16

17

18

19

20

21

22

23

24

25

26

**DEFENDANTS' OPPOSITION TO MOTION FOR CONDITIONAL
CERTIFICATION, JUDICIAL NOTICE AND EQUITABLE TOLLING** - 22
Paunovic v. OBI Seafoods, et al.; Case No. 2:21-cv-00884-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1

## CERTIFICATE OF SERVICE

2        I am a resident of the State of Alaska, over the age of eighteen years, and not a party to the

3    within action.  My business address is 500 L Street, Suite 201, Anchorage, Alaska 99501.  I hereby

4    certify  that  on  February  11,  2022,  I  electronically  filed  the  foregoing  **DEFENDANTS'**

5    **OPPOSITION  TO  MOTION  FOR  CONDITIONAL  CERTIFICATION,  JUDICIAL**

6    **NOTICE AND EQUITABLE TOLLING** with the Clerk of the Court using the CM/ECF system

7    which will send notification of such filing to the following:

8        <u>**Attorneys for Plaintiffs**</u>                                          *[ ] Via Facsimile*

9    Toby J. Marshall, WSBA #32726                                    *[ ] Via U.S. Mail*
     Ryan Tack-Hooper, WSBA #56423
10   TERRELL MARSHALL LAW GROUP PLLC                   *[ ] Via E-mail (cc)*
     936 North 34th Street, Suite 300
11   Seattle, Washington  98103-8869                               *[ ] Via Hand Delivery*
     Telephone:     206.816.6603
12   Facsimile:     206.319.5450
     tmarshall@terrellmarshall.com
13   rtack-hooper@terrellmarshall.com

14   Tamara Kenworthey, *pro hac vice*
     KENWORTHEY LAW PLLC
15   137 Fifth Avenue, 9th Floor
     New York, New York 10010
16   Telephone:     718.344.5746
     Tkenworthey@kenwortheylaw.com
17

18       I declare under penalty of perjury under the laws of the State of Alaska that the above is

19   true and correct.  Executed on February 11, 2022, at Anchorage, Alaska.

20
                                  */s/ Renea I. Saade*
21                                _____
                                  Renea I. Saade
22                                rsaade@littler.com
                                  **LITTLER MENDELSON**
23

24   4859-8952-2954.1 / 112405-1001

25

26

**DEFENDANTS' OPPOSITION TO MOTION FOR CONDITIONAL**
**CERTIFICATION, JUDICIAL NOTICE AND EQUITABLE TOLLING** - 23
Paunovic v. OBI Seafoods, et al.; Case No. 2:21-cv-00884-MJP

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300