UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARIJA PAUNOVIC and DUSAN PAUNOVIC, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OBI SEAFOODS LLC and OCEAN BEAUTY SEAFOODS LLC,<br><br>Defendants. | CASE NO. C21-884 MJP<br><br>ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION |

This matter comes before the Court on Plaintiffs' Motion for Conditional Certification, Judicial Notice, and Equitable Tolling. (Dkt. No. 28.) Having reviewed the Motion, Defendants' Opposition (Dkt. No. 31), the Reply (Dkt. No. 33), and all supporting materials, the Court GRANTS the Motion in part.

**BACKGROUND**

Plaintiffs Marija and Dusan Paunovic bring claims under the Fair Labor Standards Act and the Alaska Wage and Hour Act against their former employers Defendants OBI Seafoods

1  LLC and Ocean Beauty Seafoods LLC. (Complaint ¶ 1 (Dkt. No. 1-1).) Plaintiffs allege
2  Defendants have knowingly and improperly delayed payment of wages due for their work as
3  seasonal fish processors in Alaska. (Id. ¶¶ 1-2.) Relevant to the pending Motion, Plaintiffs seek
4  to certify collective claims under the Fair Labor Standards Act, which center on allegations that
5  Defendants failed to pay them, and others similarly situated on a biweekly basis. (Id. ¶¶ 49-69,
6  82-101.) The Court reviews the relevant allegations.

7       Plaintiffs reside in Serbia and have worked in Alaska as fish processors on H-2B work
8  visas. (Compl. ¶¶ 6-7, 15-16, 18.) In 2019, Marija Paunovic worked for Ocean Beauty and
9  alleges that she was paid only once at the end of the six-week processing season. (Id. ¶¶ 19-20.)
10 After being hired to work for the 2020 processing season, both Plaintiffs traveled to Seattle in
11 June 2020, where they spent two days in quarantine before traveling to OBI's processing facility
12 in Naknek, Alaska. (Id. ¶¶ 21-22.) They ultimately spent twenty-nine days in quarantine. (Id. ¶
13 37.) They were then paid only $75/day and received payment more than a month after they
14 arrived, and never performed any fish processing. (Id. ¶¶ 38-39.)

15      Though they have not provided their work contracts, Plaintiffs allege "upon information
16 and belief" that their contracts provided for biweekly payment. (Compl. ¶ 42.) They also allege
17 that "[o]ther Alaska seafood processing entities pay their employees on a bi-weekly basis." (Id. ¶
18 43.) And they note that under the H-2B regulations, employers are required to pay wages at least
19 biweekly, or more frequently. (Id. ¶ 41 (citing 29 C.F.R. § 503.16(h)).)

20      Plaintiffs ask the Court to approve a collective action for "All current or former
21 employees of OBI Seafoods LLC and/or Ocean Beauty Seafoods LLC who at any time after May
22 2018 were hired to perform fish processing work and were paid at greater intervals than
23
24

ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION - 2

biweekly." (Mot. at 2 (Dkt. No. 28 at 6).) Plaintiffs also ask the Court to order Defendants to provide the following information:

> A list, in electronic, delimited, and importable format, of all members of the collective action, as defined above, including each member's: (1) name; (2) last known mailing address; (3) last known telephone number; (4) last known personal email address; (5) job title; (6) dates and location of employment; (7) employee number; (8) date of birth; and (9) Social Security number if the Collective Member is a U.S. citizen or Alien Registration Number if the Collective Member is an H-2B visa holder.

(Dkt. No. 28 at 6.) And Plaintiffs ask the Court to approve the form and content of a print and email notice, as well as a reminder notice to the collective members.

Lastly, Plaintiffs ask the Court to equitably toll the statute of limitations for all opt-in plaintiffs from January 14, 2022 to the date of entry of the Court's order on the Motion plus 55 more days "to reflect the extensions granted to Defendants." (Mot. at 3.) And in the reply, Plaintiffs ask the Court to extend the tolling for 60 days after the date of this Order to accommodate the time Defendants identify as necessary to locate the class list information.

Defendants oppose all of Plaintiffs' requests, and submit additional information from a corporate declarant, Tony Ross. The Court reviews the relevant disputes in its analysis, below.

## ANALYSIS

A.  **Collective Action Certification Standard**

The FLSA permits employees to bring lawsuits on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216(b). The Court evaluates "the propriety of the collective mechanism—in particular, plaintiffs' satisfaction of the 'similarly situated' requirement—by way of a two-step 'certification' process." Campbell v. City of Los Angeles, 903 F.3d 1090, 1110 (9th Cir. 2018) (citing 1 McLaughlin on Class Actions § 2:16 (14th ed. 2017)). At step one, the "plaintiffs will, at some point around the pleading stage, move for 'preliminary certification' of the collective action, contending that they have at least facially

satisfied the 'similarly situated' requirement." Id. (citing 1 McLaughlin on Class Actions § 2:16). At step two, "after the necessary discovery is complete, defendants will move for 'decertification' of the collective action on the theory that the plaintiffs' status as 'similarly situated' was not borne out by the fully developed record." Id. (citing 1 McLaughlin on Class Actions § 2:16).

The Court finds itself at step one of this process. Here, the Court employs a "lenient" standard, which is "sometimes articulated as requiring 'substantial allegations,' sometimes as turning on a 'reasonable basis,' but in any event loosely akin to a plausibility standard, commensurate with the stage of the proceedings." Campbell, 903 F.3d at 1109 (citation omitted). "[T]he district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence." Id. (citation omitted). In approving a motion for certification "[t]he court must only be satisfied that a 'reasonable basis' exists for plaintiffs' claims of class wide injury." Bollinger v. Residential Cap., LLC, 761 F. Supp. 2d 1114, 1119 (W.D. Wash. 2011) (citation omitted). "A grant of preliminary certification results in the dissemination of a court-approved notice to the putative collective action members, advising them that they must affirmatively opt in to participate in the litigation." Id. But preliminary certification does not "produce a class with an independent legal status[] or join additional parties to the action." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 75 (2013). "The sole consequence" of a successful motion for preliminary certification is "the sending of court-approved written notice" to workers who may wish to join the litigation as individuals. Id.

1   **B.      A Collective Action is Appropriate**

2           Plaintiffs identify intertwined factual and legal issues that are material to the disposition

3   of their FLSA claims, which makes them similarly situated to the other members of the proposed

4   collective making certification appropriate. See Campbell, 903 F.3d at 1107.

5           "[T]here is no established definition of the FLSA's 'similarly situated' requirement, nor

6   is there an established test for enforcing it." Campbell, 903 F.3d at 1111 (9th Cir. 2018) (citing

7   Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1102 (10th Cir. 2001)). As the Ninth

8   Circuit has concluded, "[p]arty plaintiffs are similarly situated, and may proceed in a collective,

9   to the extent they share a similar issue of law or fact material to the disposition of their FLSA

10  claims." Id. at 1117. "Under section 216(b), if the party plaintiffs are similar in some respects

11  material to the disposition of their claims, collective treatment may be to that extent appropriate,

12  as it may to that extent facilitate the collective litigation of the party plaintiffs' claims." Id. at

13  1115 (emphasis in original). "Significantly, as long as the proposed collective's 'factual or legal

14  similarities are material to the resolution of their case, dissimilarities in other respects should not

15  defeat collective treatment.'" Senne v. Kansas City Royals Baseball Corp., 934 F.3d 918, 948

16  (9th Cir. 2019) (quoting Campbell, 903 F.3d at 1114 (emphasis omitted)). The test is "not simply

17  to identify shared issues of law or fact of some kind, but to identify those shared issues that will

18  collectively advance the prosecution of multiple claims in a joint proceeding." Campbell, 903

19  F.3d at 1115 (emphasis in original). The Ninth Circuit's broad interpretation of the statutory term

20  comes from "the background principle that 'because the FLSA is a remedial statute, it must be

21  interpreted broadly.'" Id. (quoting Lambert v. Ackerley, 180 F.3d 997, 1003 (9th Cir. 1999) (en

22  banc)).

23

24

1          Plaintiffs reasonably contend that they are similarly situated to all individuals hired by

2   Defendants to be fish processors and who were not paid every two weeks as required by the

3   FLSA. (Mot. at 4-5, 7.) While not robust, the allegations and evidence appears to bear this out.

4   Marija Paunovic was hired to and performed fish processing work for Defendant Ocean Beauty

5   in 2019. (Compl. ¶ 19.) And in 2020, both Plaintiffs were hired as fish processors in 2020 though

6   they were unable to get out of quarantine to do any fish processing work. (Id. ¶ 21.) Plaintiffs

7   also alleges that Dusan Paunovic performed fish processing in 2018 and 2019, though not for

8   either Defendant. (Id. ¶ 19.) And in both 2019 and 2020, Plaintiffs allege that they were paid on

9   intervals exceeding two weeks. (Id. at 20, 38.) This makes them similarly situated to others who

10  have been hired as fish processors, but not paid every two weeks. And even though Plaintiffs

11  were not able to do fish processing work in 2020, they allege that they were still entitled to be

12  paid biweekly as fish processors.

13         These facts are material to the primary legal issue presented in Plaintiffs' FLSA claim,

14  which is whether they were due wages at least every two weeks. The FLSA requires payment of

15  wages on a "payday," but does not contain a specific requirement for biweekly payment. See

16  Biggs v. Wilson, 1 F.3d 1537, 1540 (9th Cir. 1993) (noting that "wages become 'unpaid' [] when

17  they are not paid at the time work has been done, the minimum wage is due, and wages are

18  ordinarily paid—on payday"). Instead, the Court looks at the "regular payday," which may be set

19  by customary practices or any legal terms. See id. Here, Plaintiffs point to three alleged sources

20  of the two-week payday requirement. First, they cite federal regulations that require all H-2B

21  workers to be paid at least every two weeks. 29 C.F.R. § 503.16(h). This imposes a bright-line

22  requirement for biweekly payment for H-2B workers. Second, "on information and belief"

23  Plaintiffs allege that the contracts they and other fish processors signed provided for biweekly

24

payment regardless of whether the employee is on an H-2B visa. (Compl. ¶¶ 42, 90.) Third, Plaintiffs allege that it is customary in the industry that fish processors be paid every two weeks, H-2B or otherwise. (Id. ¶¶ 43, 90.) Given the lenient standard that applies, in which the Court accepts all well-pleaded allegations, there appears plausible grounds to find that all fish processors were due their pay every two weeks. This makes Plaintiffs' personal FLSA claims common to all fish processors who were not paid every two weeks. And while Defendants may ultimately provide evidence that some or all employees were not due wages every two weeks, they have failed to provide any such evidence at this juncture. In fact, Defendants' declarant avers that only 7 out of 10 facilities at issue paid employees every two weeks. (Declaration of Tony Ross ¶ 13.) The Court therefore grants the request to allow certification of the collective action as to all similarly-situated fish processors.

The Court addresses Defendants' four attacks to the common factual and legal issues identified, none of which persuades the Court to deny the Motion.

First, Defendants argue that Plaintiffs have not defined what they mean by "fish processing" and the term is too broad and unclear be common to the collective. (Opp. at 15.) Plaintiffs have the better argument here. Plaintiffs argue that "[f]ish processing work involves the cleaning, washing, weighing, canning, glazing, packaging, freezing, preserving, or packing of fish and other seafood." (Mot. at 4 (citing Compl. at ¶ 52).) Plaintiffs point out that Defendants' corporate declarant uses the term himself, as evidence it is commonly understood. (Reply at 3 (citing the Declaration of Tony Ross).) And Plaintiffs also suggest that regulations define fish processing work. (Mot. at 4 (citing 29 C.F.R. § 784.101).)) The regulations cited primarily identify certain kinds of work that may relate to fish processing without expressly defining the term. See 29 C.F.R. § 784.101. But together with the allegations in the Complaint, the Court

finds these sufficient to demonstrate that fish processing is a commonly understood term in the industry. At most, Defendants suggest that the term might be read to include managers, supervisors, and office workers, to whom Plaintiffs are not similarly situated. (Opp. at 15.) But Defendants do not explain how one could include such people as fish processors given the common meaning of the term. Defendants' own proposed definition of the collective uses the term without any additional definition, which undermines Defendants' argument. (See Opp. at 16 (identifying "All current and former employees of Ocean Beauty Seafoods LLC who worked as a fish processor. . .").) This argument is unconvincing.

Second, Defendants argue that Plaintiffs are overreaching in trying to represent employees who worked in 2018, because neither Plaintiffs hired to do fish processing work in 2018. At present, the Court's inquiry is focused on whether Plaintiffs are similarly situated to other fish processors who were hired by Defendants to do fish processing and who were not paid every two weeks. The fact that neither Plaintiff was hired by Defendants in 2018 does not necessarily make them dissimilarly situated to those who did. Rather, the question is whether they are similarly situated to others who were hired in 2018 and not paid on a biweekly basis. Defendants' own declarant has confirmed that for at least three fish processing plants, employees were not paid every two weeks in 2018. (Ross Decl. ¶ 13.) This supports Plaintiffs' allegations that Defendants engaged the in same conduct that they claim violates the FLSA back into 2018. Additionally, Defendants offer no evidence that anyone hired in 2018 to do fish processing would have been subject to different terms of employment regarding the timeliness of payments. As such, the Court finds certification of a collective back to 2018 appropriate at this junction. But the question of whether any such claims would be timely is not resolved by this Order.

1    Third, Defendants attack Plaintiffs' amendment to the collective definition to include a
2 worldwide class, when it was initially pleaded as applying only to persons "in the United States."
3 (Opp. at 15; see Compl. ¶ 45.) But Plaintiffs can propose a new definition of the collective when
4 they move for certification. See Senne, 934 F.3d at 925 (allowing FLSA certification where class
5 was defined for the first time in a motion for reconsideration). Plaintiffs themselves are not
6 located in the United States or United States citizens, which gives the amendment logical sense.
7 And Defendants have not shown why citizenship would alter the inquiry into whether the
8 specific fish processor employee should have been paid every two weeks given the allegations
9 that pay is customarily due every two weeks even for non-H-2B workers.
10   Fourth, Defendants fault Plaintiffs for not providing "any evidence that there was a
11 universal pay practice across the operations of both Defendants." (Opp. at 12.) But whether
12 Defendants' pay practices varied or whether one Defendant hired no workers in 2020 is not
13 relevant to the legal question of whether the members of the collective were entitled to be paid
14 every two weeks—a requirement that stems from H-2B regulations, contracts, or local custom.
15 See Biggs, 1 F.3d at 1540. And Defendants' corporate declarant does not rebut the allegation that
16 fish processors were to be paid biweekly. Instead, he avers that Defendants have paid fish
17 processors biweekly at times, and at other times not. (See Ross Decl. ¶¶ 10-13.) The same
18 declarant confirms that only 3 of the 10 fish processing plants Defendants operate "have not had
19 consistent bi-weekly payroll since 2018." (Ross Decl. ¶ 13.) This tends to support Plaintiffs'
20 allegation that it is customary to pay fish processors every two weeks. And it is not sufficient to
21 rebut the allegations in the complaint that it is customary for all fish processors (H-2B and non-
22 H-2B employees) to be paid biweekly. The Court therefore finds the allegations sufficient that
23 payroll was due every two weeks for all fish processors. See Campbell, 903 F.3d at 1109. And
24

while the evidence here is not robust, all that is required is some "modest factual showing" that the plaintiff is similarly situated to the potential class. See Misra v. Decision One Mortg. Co., LLC, 673 F. Supp. 2d 987, 993 (C.D. Cal. 2008) (citation and quotation omitted).

The Court also notes that Defendants concede that all H-2B employees have to be paid every two weeks. Defendants suggest that this requirement can be altered by agreement. But this argument finds no legal support. Defendants cite to a single district court case from Arkansas for this proposition, but the decision did not consider whether an employer could vary the regulations specific to H-2B visa holders, which contains no explicit permission to pay less frequently. (See Opp. at 12 (citing Browne v. P.A.M. Transp., Inc., 434 F. Supp. 3d 712, 726 (W.D. Ark. 2020)).) In Browne, the court did not consider the applicable H-2B provisions and simply stated that "[n]either the FLSA nor the AMWA require a specific frequency of pay, so an employer is free to set his own regular pay day intervals. . . ." Browne, 434 F. Supp. 3d at 726. That does not resolve the question of whether an employer could deviate from 29 C.F.R. § 503.16(h), and Defendants offer no reason that it would be permissible to do so or that there is any relevant contractual provision that applies here.

Having considered the arguments and supporting materials, the Court GRANTS the Motion to certify the collective as defined by Plaintiffs.

**C.     Notice**

Given the Court's decision to certify the collective, the Court must ensure that notice is "timely, accurate, and informative." Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 172 (1989). The Court therefore reviews the three proposed notices: (1) an FLSA notice and consent form; (2) an email version of the FLSA notice; and (3) a reminder notice. (See Declaration of

Toby Marshall ISO Mot. (Dkt. No. 29).) With several amendments explained below, the Court finds the notices appropriate.

To frame the Court's review of the notices, it analyzes them through the lens of Defendants' five specific concerns: (1) the term "fish processor" is undefined and vague; (2) the notice fails to inform collective members of their responsibilities as plaintiffs; (3) Section 3 of the notice should require opt-in plaintiffs to identify the source of their two-week payday, the Defendant for whom they worked, and the period of time they worked; (4) the last sentence of Section 5 is argumentative and should be deleted; and (5) the reminder notice is inappropriate.

First, while the term "fish processor" is not overly vague for purposes of allowing a collective action, the Court finds practical value in defining it for the notices. The Court is particularly concerned that the notices be understood by non-native speakers of English given the allegations that most of the employees at issue worked on H-2B visas. Specifically, the Court finds the notice must be amended to include the following statement: Fish processing means work that involves the cleaning, washing, weighing, canning, glazing, packaging, freezing, preserving, or packing of fish and other seafood. (See Mot. at 4 (citing Compl. at ¶ 52).) The Court directs Plaintiffs to add this statement in the "Why did I get the notice" section of the print notice and the "How do I know if the I have the right to participate" section of the email notice.

Second, the need to inform class members of their discovery duties and potential financial exposure appears unnecessary. Defendants have not identified what discovery they intend to gather from collective members. And as other courts have concluded, warning collective members that they may have participate in discovery "is unnecessary and inappropriate" and may well chill participation contrary to the FLSA. Hunter v. Legacy Health, No. 3:18-CV-02219-AC, 2021 WL 24553, at *8 (D. Or. Jan. 4, 2021), motion to certify appeal

denied, No. 3:18-CV-02219-AC, 2021 WL 4238991 (D. Or. Apr. 13, 2021) (citing Prentice v. Fund for Pub. Interest Research, Inc., No. C-06-7776 SC, 2007 WL 2729187, at *5 (N.D. Cal. Sept. 18, 2007)). Second, Defendants have not persuaded the Court that the notice must inform collective members that they may have to pay costs. This, too, has the potential to chill participation in the face of a remote possibility that Plaintiffs are found to have litigated this in bad faith. See Carlson v. United Nat. Foods, Inc., No. C20-5476-JCC, 2021 WL 3616786, at *5 (W.D. Wash. Aug. 14, 2021) ("[T]he potential chilling effect of [warning of the risk they could be liable for Defendants' costs] outweighs any utility it might provide."). The Court is therefore unconvinced that any warnings as Defendants request are necessary.

Third, the Court rejects Defendants' proposal that collective members must include with their consent the identity of the source of their right to be paid every two weeks. The right to biweekly payment goes to the merits of the FLSA claim. This may be tested through discovery and requiring production of these materials with the return of the consent is unnecessary and unduly burdensome. That said, the Court notes that Plaintiffs have the burden to prove that they and members of the collective were due payment every two weeks. So this information appears relevant. Even so, it need not be included in the consent, and Defendants have provided no legal support for their demand. But the Court does agree with Defendants that the consent must identify the collective member's employer(s) and the dates during which the member was employed. The Court directs Plaintiffs to make this revision to the consent.

Fourth, the Court disagrees that the first sentence of Section is inappropriately argumentative. The statement accurately warns potential class members of their rights and the statute of limitations. The Court finds the statement fair and neutral.

1    Fifth, Defendants argue that the reminder notice is unnecessary and may wrongly drum

2  up interest in the case in a non-neutral manner. As the Supreme Court has warned, "[i]n

3  facilitating notice, the Court must avoid communicating to absent class members any

4  encouragement to join the suit or any approval of the suit on its merits." Hoffman-La Roche, 493

5  U.S. at 168-69. And the Parties here have identified a split among courts as to whether to

6  approve reminder notices. Having considered the issue, the Court finds the reminder notice

7  appropriate, given that the collective action presents an efficient tool to vindicate the rights at

8  issue and given the fact that the collective likely includes a diverse cohort of individuals from

9  around the world who may not speak English as a first language or be familiar with the

10  American judicial process. But the Court believes the reminder notice must also include a

11  reference to the original notice's explanation of "What if I choose not to join." (See Ex. 1 to the

12  Marshall Decl. (Dkt. No. 29-10.) That first sentence of the reminder notice must be amended as

13  follows:

14-16      On [DATE], we mailed you a Notice of Pending Lawsuit, informing you of your right to participate in the above-referenced lawsuit, explaining what the lawsuit is about, explaining how you can join the lawsuit, explaining what to do if you do not to want join, and describing how the lawsuit may affect your rights and the responsibilities you may have if you choose to join.

17  With that revision, the Court approves the reminder notice.

18    Subject to the revisions identified above, the Court approves the notices and consent

19  forms.

20  **D.**    **Class List**

21    Plaintiffs request a list of all Collective Members, including each member's: (1) name;

22  (2) last known mailing address; (3) last known telephone number; (4) last known personal email

23  address; (5) job title; (6) dates and location of employment; (7) employee number; (8) date of

24

birth; and (9) Social Security number if the Collective Member is a U.S. citizen or Alien Registration Number if the Collective Member is an H-2B visa holder. Defendants lodge two primary objections: (1) they will need at least 60 days to identify the information sought; and (2) providing phone numbers, social security numbers, and alien registration numbers is unnecessary and an invasion of privacy.

As to the first issue, Plaintiffs agree to a 60-day period for Defendants to locate and produce the information, provided that the statute of limitations is tolled during that period. The Court finds this to be a reasonable and practical solution to the problem Defendants identify. The Court takes this into consideration in assessing Plaintiffs' request for equitable tolling, below.

As to second issue, the Court requires further information from Plaintiffs as to why the telephone numbers, social security numbers, or alien registration numbers are needed. In Reply, Plaintiffs suggest that this information "will aid Plaintiffs in locating members who may no longer be employed by Defendants or who may have relocated." But Plaintiffs have not explained how any of this information will help them contact anyone and they have not suggested that they intend to contact any members of the collective via telephone as part of a notice campaign. The Court therefore RESERVES RULING on this portion of the request. Plaintiffs shall file a supplemental brief of no more than 3 pages within 7 days of entry of this order to explain the necessity. Defendants shall be permitted a response of no more than 3 pages due 4 days after.

The Court otherwise finds the information sought to be appropriate and ORDERS that it be produced as requested within 60 days of entry of this Order.

1  **E.     Equitable Tolling**

2  　　　　Plaintiffs ask the Court to equitably toll the statute of limitations for all opt-in plaintiffs
3  from January 14, 2022 (the day they filed the Motion) to the date of this Order plus 55 more days
4  "to reflect the extensions granted to Defendants." (Mot. at 3.) And in the reply, Plaintiffs ask the
5  Court to extend the tolling for 60 days after issuing this Order to accommodate the time
6  Defendants requested to produce the requested class information. The Court agrees in part with
7  Plaintiffs' request.

8  　　　　The statute of limitations for each member of the collective is tolled individually upon
9  filing a written consent to become a party plaintiff. See 29 U.S.C. § 256(b). Without equitable
10  tolling, the statute of limitations on a putative class member's FLSA claim continues to run in
11  the time between the filing of the collective action complaint and the filing of their written
12  consent opting-in. See id. But the FLSA statute of limitations is a procedural limitation that may
13  be tolled when equity warrants. See Partlow v. Jewish Orphan's Home of S. Cal., Inc., 645 F.2d
14  757, 761 (9th Cir. 1981) abrogated on other grounds by Hoffman-La Roche, 493 U.S. 165.
15  "Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful
16  conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's
17  control made it impossible to file a claim on time." Stoll v. Runyon, 165 F.3d 1238, 1242 (9th
18  Cir. 1999), as amended (Mar. 22, 1999).

19  　　　　The Court finds that some equitable tolling is appropriate. The first period that the Court
20  tolls is the time between the filing of the Motion (Jan. 14, 2022) and the date of this Order.
21  Tolling this period of time is a reasonable means of protecting the rights of the collective while
22  the Court considered the Motion. The second tolling period of tolling the Court approves is the
23  60 days after the date of this Order to account for the time Defendants need to locate the class
24

list. This, too, protects the interests of the members of the collective to whom notice cannot be given until the notice information is provided. The third period that the Court tolls is an agreed one: between October 6, 2021 to January 10, 2022. The last period the Court tolls is the 21 days between when Defendants' answer was due and when it was actually filed (July 26 to August 16, 2021). While Plaintiffs ask for 55 days to account for Defendants' delay, the Court only finds these 21 days to be the proper subject for equitable tolling. The Court is aware that it found sufficient cause the accept the late answer. (Dkt. No. 8.) But the Court expressly reserved ruling on whether equitable tolling might still be appropriate. Considering Defendants' unilateral decision to file a late answer and the limited reasons justifying the delay, the Court finds that equitable tolling for these 21 days is necessary to protect the rights of the collective and that this was extraordinary conduct beyond Plaintiffs' control.

As applied, the Court's TOLLS the statute of limitations from September 19, 2021 until 60 days from the entry of this Order.

## CONCLUSION

The Court finds that the collective action here should be conditionally certified given the nature of the legal claims presented and the evidence that Plaintiffs are similarly situated to the collective. The Court therefore GRANTS the Motion and conditionally certifies the case as a collective action as to Plaintiffs' FLSA claim. The Court GRANTS in part the request for the issuance of notice and APPROVES the notice with the mandatory revisions identified in this Order. As to the class list information, the Court GRANTS the request in part and ORDERS the class list to be produced within 60 days of entry of this order, except as to the telephone, social security, and alien registration numbers for which the Court has ordered additional briefing. And

the Court GRANTS in part Plaintiffs' request for equitable tolling in part and tolls the claims as outlined above.

The clerk is ordered to provide copies of this order to all counsel.

Dated March 28, 2022.

*[signature]*

Marsha J. Pechman
United States Senior District Judge