UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARIJA PAUNOVIC and DUSAN PAUNOVIC, individually and on behalf of all others similarly situated, | CASE NO. C21-884 MJP |
| Plaintiffs, | ORDER ON MOTION FOR SUMMARY JUDGMENT |
| v. | |
| OBI SEAFOODS LLC and OCEAN BEAUTY SEAFOODS LLC, | |
| Defendants. | |

This matter comes before the Court on Plaintiffs' Motion for Summary Judgment re Employer of Former Icicle Workers. (Dkt. No. 164.) Having reviewed the Motion, Defendants' Response (Dkt. No. 169), the Reply (Dkt. No. 173), Defendants' Request for Judicial Notice (Dkt. No. 172), and all supporting materials, the Court DENIES the Motion, but finds that the Quarantine Class and Class Notice should include the workers at the former Icicle facilities.

**BACKGROUND**

Plaintiffs Marija and Dusan Paunovic bring claims under the Fair Labor Standards Act (FLSA) and the Alaska Wage and Hour Act (AWHA) against their former employers Defendants OBI Seafoods LLC (OBI) and Ocean Beauty Seafoods LLC (Ocean Beauty). (Complaint ¶ 1 (Dkt. No. 1-1).) The Court has certified two classes, one which pursues claims that Defendants failed to pay minimum wage for time spent in quarantine (Quarantine Class), and another that pursues claims that Defendants failed to timely pay wages every two weeks (Pay-Delay Class). (See Order on Class Certification (Dkt. No. 135).) After certification, Plaintiffs sought court approval of a class notice, which included a request that the notice be provided to individuals who were hired as fish processors for Icicle Seafoods in June 2020 and who worked at sites operated by OBI after June 1, 2020. (See Dkt. No. 152-2 at 5.) Defendants objected to the request, arguing that the Icicle workers were never employed by Defendants in 2020 and were merely "leased" from Icicle. (See Dkt. No. 157.) The Court found that it could not resolve this dispute without further briefing given that it involved disputed factual and legal questions. (Order for Further Briefing at 2 (Dkt. No. 162).) The Court ordered Plaintiffs to file a motion for partial summary judgment as to who the legal employer was of the Icicle workers after June 1, 2020. (Id.) Plaintiffs have now filed a motion for summary judgment, asking the Court to find that OBI was the legal employer of the Icicle workers after June 1, 2020 and that they be included in the Quarantine Class. Plaintiffs do not claim that the Icicle workers can be part of the Pay-Delay Class. (Mot. at 2 n.3.)

To understand the dispute, the Court briefly reviews the relationship between Defendants and Icicle Seafoods. (See Dkt. No. 157.) June 1, 2020 is the date that OBI came into existence as an entity jointly owned by Ocean Beauty and Icicle Seafoods. (Answer ¶ 10 (Dkt. No. 9);

1   Deposition of Tony Ross as Defendants' Rule 30(b)(6) witness at 44 (Dkt. No. 54-1).) And on

2   June 1, 2020, OBI took over five fish processing plants operated by Ocean Beauty and another

3   five fish processing plants Icicle operated. (Ross Dep. at 44). The Parties dispute whether the

4   workers at the Icicle plants became OBI employees or were merely "leased" workers from Icicle

5   that did not become employees of OBI until 2021.

6        The facts regarding the employment of the Icicle workers in 2020 remains disputed.

7   Plaintiffs insist that Defendants have already admitted that OBI employed the Icicle workers in

8   2020. They point to the Answer, where Defendants "admit[ted] that OBI Seafoods employed

9   foreign citizens on H-2B visas temporarily working in the United States as fish processing

10  employees beginning June 2020." (Answer ¶ 2 (Dkt. No. 9).) And Defendants admitted that

11  "during the 2020 season, OBI Seafoods required employees traveling from outside Alaska to

12  Alaska for work to follow the State of Alaska's mandates and recommendations related to

13  quarantining." (Id. ¶ 3.) Defendants' Rule 30(b)(6) witness—Tony Ross—also testified that OBI

14  set the quarantine pay rates for all leased fish processor workers, including the Icicle workers.

15  (Ross Dep. at 79-80, 84.) And the witness testified that Defendants managed all leased workers

16  and OBI benefitted from their work. (See Ross Dep. at 29, 41, 47-48, 76, 103-08, 145-51.) The

17  witness also confirmed that the only difference between leasing and employing workers was the

18  payroll system used. (Id. at 29, 31-33.) Lastly, as evidence that OBI had the power to terminate

19  leased workers, Plaintiffs point out that OBI terminated them for violating the quarantine rules

20  even though they were purportedly "leased" Ocean Beauty workers. (Ross Dep. 87-89; see Dkt.

21  Nos. 54-7, 54-8 (termination notices).)

22       Defendants insist that OBI had no employees in 2020 and could not have been the legal

23  employer of the Icicle workers as a result. They rely in part of the Rule 30(b)(6) witness's

24

1    testimony that the only people making decisions regarding the leased workers were Ocean

2    Beauty employees, and not OBI employees. (See Ross Dep. at 31.) This testimony came

3    immediately after his counsel called for a break and the witness volunteered this testimony. (Id.)

4    Defendants also rely on substantive changes that the deponent made to his testimony through a

5    deposition errata. (See Ross Dep. Errata (Ex. B to the Declaration of Renea Saade (Dkt. No. 171-

6    1 at 15-16)).) Those changes cast doubt on Ross's testimony that OBI managed leased workers

7    after June 1, 2020 at the Ocean Beauty and Icicle locations. In part, the errata changed Ross's

8    testimony to say that OBI "leased" instead of "managed" these workers. (Errata re: Page 29.)

9    The errata also changed Ross's testimony to say that it was not OBI who managed the workers,

10   but instead "OB management personnel leased to OBI" who performed the management role.

11   (See Errata re: pages 30, 41.) And the deponent changed his statement that "employees that were

12   leased by OBI from Ocean Beauty were leased for the benefit of OBI" to "employees that were

13   leased by OBI from Ocean Beauty were leased to work for OBI." (Errata re: page 76.) The errata

14   also changed the witness's testimony regarding custody of employment records. (See Errata re:

15   pages 137-139.) Ross asserts that the changes were made to be consistent with his testimony,

16   though no specific cites are provided.

17          Defendants also rely on the declaration of a former Icicle Seafoods human resources

18   employee to assert that OBI did not employ the Icicle workers in 2020. Kris Kraakmo, an

19   individual who worked in HR for Icicle through 2020 and is now an HR Director of Operations

20   at OBI, asserts that Icicle did all of the recruiting, hiring, and "onboarding" of workers at the five

21   Icicle facilities at issue in 2020. (Declaration of Kris Kraakmo ¶¶ 14-29 (Dkt. No. 170).)

22   Kraakmo also avers that Icicle applied for the permissions to hire H-2B workers and certified

23   that all of the workers at the plants would be subject to those visa requirements. (Id. at ¶¶ 17-23.)

24

1  Kraakmo states that Icicle employees conducted all of the performance management, discipline,

2  and terminations of Icicle employees at these locations through 2020. (Id. ¶¶ 30-42.) Kraakmo

3  also states that Icicle maintained all of the payroll and performed all of the HR functions,

4  including firing in 2020. (Kraakmo Decl. ¶¶ 33-50.) And he claims that he does not have access

5  to Icicle employee records and is unaware of anyone else at OBI who would. (Id. ¶ 58.)

6                                                   **ANALYSIS**

7            Plaintiffs' Motion requires the Court to first assess whether the changes in the Rule

8  30(b)(6) deposition transcript constitute "shams," and then whether OBI became the legal

9  employer of the Icicle workers on June 1, 2020. As explained below, the Court declines to strike

10  the errata as a "sham," and finds that genuine issues of material fact preclude granting summary

11  judgment. After analyzing those issues, the Court concludes that the class notice should include

12  the Icicle workers, as Plaintiffs proposed. The Court notes that it has not taken judicial notice of

13  any of the materials Defendants have submitted in Dkt. No. 172, as those records are

14  unnecessary to consider to resolve the pending motion.

15  **A.       The Deposition Errata**

16            Plaintiffs request the Court find that the errata changes Defendants' Rule 30(b)(6)

17  made to his testimony constitute "sham" changes that should be stricken. The Court declines to

18  strike the changes.

19            Under the sham affidavit rule "'a party cannot create an issue of fact by an affidavit

20  contradicting his prior deposition testimony.'" Hambleton Bros. Lumber Co. v. Balkin Enters.,

21  Inc., 397 F.3d 1217, 1225 (9th Cir. 2005) (quoting Kennedy v. Allied Mut. Ins. Co., 952 F.2d

22  262, 266 (9th Cir. 1991). The sham affidavit rule prevents "a party who has been examined at

23  length on deposition" from "rais[ing] an issue of fact simply by submitting an affidavit

24

1    contradicting his own prior testimony," which "would greatly diminish the utility of summary

2    judgment as a procedure for screening out sham issues of fact." <u>Kennedy</u>, 952 F.2d at 266. The

3    rule applies to deposition errata because "Rule 30(e) is to be used for corrective, and not

4    contradictory, changes." <u>Hambleton</u>, 397 F.3d at 1226. So "[w]hile the language of FRCP 30(e)

5    permits corrections 'in form or substance,' this permission does not properly include changes

6    offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable

7    summary judgment." <u>Id.</u> at 1225.

8            Because the sham affidavit rule must be applied with caution, the Court must make two

9    findings before striking an errata. <u>Van Asdale v. Int'l Game Tech.</u>, 577 F.3d 989, 998 (9th Cir.

10   2009). First, the Court must find that the errata is a sham. <u>Yeager v. Bowlin</u>, 693 F.3d 1076,

11   1080 (9th Cir. 2012). "In determining whether a deposition errata constitutes a sham, courts

12   consider circumstances including the number of corrections, whether the corrections

13   fundamentally change the prior testimony, the impact of the corrections on the cases (including

14   whether they pertain to dispositive issues), the timing of the submission of corrections, and the

15   witness's qualifications to testify." <u>Karpenski v. Am. Gen. Life Companies, LLC</u>, 999 F. Supp.

16   2d 1218, 1224 (W.D. Wash. 2014). Second, the "inconsistency between a party's deposition

17   testimony and subsequent affidavit must be clear and unambiguous." <u>Yeager</u>, 693 F.3d at 1080

18   (quoting <u>Van Asdale</u>, 577 F.3d at 998–99). The Court should strike errata as shams sparingly,

19   "because it is in tension with the principle that the court is not to make credibility determinations

20   when granting or denying summary judgment." <u>Id.</u> The Ninth Circuit has specifically

21   "caution[ed] that newly-remembered facts, or new facts, accompanied by a reasonable

22   explanation, should not ordinarily lead to the striking of a declaration as a sham. <u>Id.</u> at 1081.

23

24

1    Although Plaintiffs have identified several substantive changes that the errata makes to

2    the deposition testimony, the Court is not convinced that they should be stricken. The Court

3    cannot conclude that the changes Defendants made constitute "clear and unambiguous" sham

4    changes. See Van Asdale, 577 F.3d at 998–99. The circumstances and reasons for the changes in

5    testimony strike the Court as questionable, particularly since they impact potential liability. But

6    the witness's errata changes appear potentially consistent with some of his later testimony on the

7    same subjects. So while the Court has concerns about the propriety of the errata, the Court finds

8    it proper to allow the finder of fact to resolve the witness's credibility regarding the changes. The

9    Court therefore DECLINES to strike the errata.

10   **B.    Summary Judgment Standard**

11        Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

12   file, and any affidavits show that there is no genuine issue as to any material fact and that the

13   movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether

14   an issue of fact exists, the Court must view all evidence in the light most favorable to the

15   nonmoving party and draw all reasonable inferences in that party's favor. Anderson v. Liberty

16   Lobby, Inc., 477 U.S. 242, 248-50 (1986). A genuine issue of material fact exists where there is

17   sufficient evidence for a reasonable factfinder to find for the nonmoving party. Id. at 248. The

18   moving party bears the initial burden of showing that there is no evidence which supports an

19   element essential to the nonmovant's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

20   Once the movant has met this burden, the nonmoving party then must show that there is a

21   genuine issue for trial. Anderson, 477 U.S. at 250. If the nonmoving party fails to establish the

22   existence of a genuine issue of material fact, "the moving party is entitled to judgment as a

23   matter of law." Celotex, 477 U.S. at 323-24.

24

**C.      Legal Employer of the Icicle Workers**

The Court first reviews the legal standard for determining whether the Icicle workers were OBI employees and then the facts in dispute on this issue. Although the Court has considered all of the relevant evidence, the Court's analysis focuses in particular on OBI's role regarding the Icicle workers' quarantine terms and pay, given that the they form the basis of the Quarantine Class's claims.

**1.      Legal Standards**

To determine whether the Icicle workers were OBI or Ocean Beauty employees in 2020, the Court must consider the statutory definition of the terms "employee" and "employer." The AWHA does not define "employee" or "employer," but the FLSA does. See AS § 23.10.050-150; 29 U.S.C. §§ 203(e)(1), 203(g). In this situation, the AWHA adopts the FLSA's definition. Jeffcoat v. State, Dept. of Lab., 732 P.2d 1073, 1075 (Alaska 1987); see also AS § 23.10.145; Thornton v. Crazy Horse, Inc., 2:06-CV-00251-TMB, 2012 WL 2175753, at *16 (D. Alaska June 14, 2012).

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). To "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g). The FLSA definition of employee is "exceedingly broad," but "does have its limits." Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 295 (1985). "The test of employment under the [FLSA] is one of economic reality." Dawson v. Nat'l Collegiate Athletic Ass'n, 932 F.3d 905, 909 (9th Cir. 2019) (quoting Alamo Found., 471 U.S. at 301 (quotation omitted)). "Economic reality accounts for 'the circumstances of the whole activity' rather than considering 'isolated factors' determinative." Id. (quoting Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947)).

1    The Parties agree that the four-factor test established in Bonnette v. Cal. Health &

2    Welfare Agency should be used to resolve this issue. Id., 704 F.2d 1465, 1470 (9th Cir. 1983),

3    abrogated on other grounds by Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528 (1985).

4    The test asks: "whether the alleged employer (1) had the power to hire and fire the employees,

5    (2) supervised and controlled employee work schedules or conditions of employment, (3)

6    determined the rate and method of payment, and (4) maintained employment records." Id. These

7    factors are non-exhaustive, are "not etched in stone and will not be blindly applied." Id.

8    Additionally, there can be more than one employer under the FLSA. See Torres-Lopez v.

9    May, 111 F.3d 633, 638 (9th Cir. 1997). Where there is a question of joint employment by

10   multiple entities, the same economic reality test and Bonnette factors are applied. Id. at 639

11   (holding "the concept of joint employment should be defined expansively under the FLSA"). "A

12   court should consider all those factors which are 'relevant to [the] particular situation' in

13   evaluating the 'economic reality' of an alleged joint employment relationship under the FLSA."

14   Id. (quoting Bonnette, 704 F.2d at 1470).

15       **2.    The Power to Hire and Fire**

16   The parties dispute whether OBI had the power to hire and fire the Icicle workers in

17   2020.

18   The undisputed evidence appears to show that Icicle was the sole entity that recruited,

19   hired, and "onboarded" the workers at the Icicle facilities in 2020. (See Kraakmo Decl. ¶¶ 14-

20   29.) It also appears undisputed that Icicle employees conducted all of the discipline of Icicle

21   workers at these five locations in question through 2020. (Id. ¶¶ 30-42.)

22   But Plaintiffs point to other evidence that Defendants had the authority to fire the Icicle

23   workers. First, Plaintiffs cite to Ross's testimony that "from all purposes, OBI managed those

24

1   [leased] employees" and that "OBI managed fish processing employees beginning June 2020."

2   (Ross Dep. at 29.) Although the errata changed this testimony, the original testimony suggests

3   that OBI had the power to fire these individuals. Second, Plaintiffs cite to Ross's testimony that

4   the only difference between leasing and employing workers was that the payroll and W-2s were

5   done through existing payroll systems in 2020. (Ross Dep. at 33.) Although this testimony was

6   not specific to Icicle workers, it does not appear to exclude them. Third, Plaintiffs point to Ross's

7   testimony that OBI took over all operations at the Icicle plants starting on June 1, 2020, which is

8   probative of the issue of whether OBI had the power to fire these workers. (Ross Dep. at 39-40,

9   44.) And while the errata changes some of this testimony, the original testimony (which a jury

10  could credit) supports Plaintiffs' position. Lastly, Plaintiffs argue that their own terminations

11  effectuated by OBI show that OBI had the power to terminate leased workers in 2020. This

12  evidence does not quite resolve the issue, since Plaintiffs were hired by Ocean Beauty, and not

13  Icicle. And Defendants insist that Ocean Beauty effectuated the termination, not OBI.

14  Regardless, this is circumstantial evidence that could convince a jury that OBI had the power to

15  fire workers at the Icicle facilities.

16       The disputed record here precludes a clear finding as to whether OBI possessed or lacked

17  the power to fire and hire the Icicle workers at issue.

18       **3.    Supervision and Control of Employee Work Schedules or Work Conditions**

19       Plaintiffs have provided reasonable evidence that OBI had the power to set the conditions

20  relevant to the quarantine—a key issue concerning the Quarantine Class. First, Plaintiffs point to

21  Defendants' Answer, which states "during the 2020 season, OBI Seafoods required employees

22  traveling from outside Alaska to Alaska for work to follow the State of Alaska's mandates and

23  recommendations related to quarantining." (Answer ¶ 3; see Ross Dep. at 79.) The Answer made

24

1    no distinction as to the Icicle workers and Ross affirmed this statement in the Answer was

2    correct. This supports Plaintiffs' position. Second, Ross testified that OBI coordinated the

3    quarantine process for leased workers. (Ross Dep. at 79-80.) This is probative of the issue,

4    though Ross's answer was not specific to Icicle workers. Third, Plaintiffs argue that Ross

5    admitted that OBI set the procedures for quarantine. (Mot. at 5 (citing Ross at 79-80, 84.) While

6    this testimony was specific to Ocean Beauty employees, it supports Plaintiffs' position that OBI

7    set the quarantine conditions.

8        Defendants have not pointed to any contrary evidence. Defendants principally rely on

9    Kraakmo's statement that Icicle used its own timekeeping system for workers at the Icicle

10   facilities in 2020. (Kraakmo Decl. ¶¶ 44-50.) But whether Icicle used its timekeeping system is

11   not probative of whether it controlled the conditions of the quarantine and how it supervised

12   compliance with the quarantine mandates. Kraakmo provides no insight on this issue and

13   Defendants can point to no evidence that Icicle had any role in oversight of quarantine process

14   and compliance enforcement.

15       This factor tends to favor Plaintiffs' position that OBI was the employer.

16       **4.    Rate and Method of Payment**

17       There is conflicting testimony about who set the quarantine pay rates for Icicle workers in

18   2020. Ross testified that after OBI took over operations of the Ocean Beauty and Icicle locations,

19   "[t]he voluntary stipends that were paid were a decision that was made by OBI." (Ross Dep. at

20   41.) And he admitted that all leased workers were paid this rate. (Id. at 41.) But through his

21   errata, Ross states that: "The voluntary stipends that were paid were a decision that was made by

22   OB management personnel leased to OBI." (Errata at 2.) This is consistent with Ross's testimony

23   that Libby Moore, an HR manager at Ocean Beauty (who became an OBI employee), determined

24

1    the stipend rate for 2020 and 2021. (Ross Dep. at 104.) Plaintiffs provide competing evidence

2    that Moore herself was sending emails from an OBI email address in 2020, suggesting Moore

3    was actually working as an OBI employee in 2020. (See Marshall Decl. Exs. 1-4 (Dkt. No. 174).)

4    This evidence shows a dispute of fact that precludes finding that this factor favors either party.

5    This issue must be resolved by the finder of fact.

6         **5.    Employment Records**

7         The evidence of who possesses the 2020 Icicle workers' employment records is disputed.

8    Plaintiffs point to Ross's testimony that OBI had access to past employment records dating back

9    to 2018. (See Ross Dep. at 137-38, 142.) But through his errata, Ross states that the data dating

10   back to 2018 would only exist for Ocean Beauty, and not necessarily for Icicle. (Errata at 2.)

11   Ross claims this change is "to be more accurate," but the finder of fact must resolve the accuracy

12   of this testimony. (Id.) Defendants also rely on Kraakmo's declaration, in which he states he "no

13   longer ha[s] access to Icicle payroll and timekeeping systems, or employment records for fish

14   processors at Legacy Icicle Plants prior to January 1, 2021" and that he does not know of any

15   OBI employees who do. (Kraakmo Decl. ¶ 58.) This does not clearly resolve the issue, as it does

16   not rule out the possibility that other OBI employees do have access, or where the records are

17   actually maintained.

18        Based on this record, the Court finds a dispute of fact as to where the records are kept.

19        **6.    Other Factors**

20        The Court identifies two other facts that may be relevant to resolving this issue, though

21   they are not dispositive.

22        First, the Court also notes as relevant Ross's admission during his deposition "that the

23   employees that were leased by OBI from Ocean Beauty were leased for the benefit of OBI."

24

1   (Ross Dep. at 76.) This statement tends to show that OBI benefitted financially from the work of

2   leased workers, such that the economic reality is that OBI was the employer. But the Court notes

3   that the power of this statement is dulled by two facts. First, it is specific to Ocean Beauty

4   workers, and not Icicle workers. Second, Ross has tried to change his testimony and the Court

5   cannot resolve the question of whether the change is credible at this time.

6       Second, Plaintiffs note that Defendants have not provided any basis to support their

7   position that OBI only began to employ Icicle workers in 2021. Ross testified that all fish

8   processing workers became OBI employees on January 1, 2021. (Ross Dep. at 31.) But

9   Defendants have not articulated why this is the case, and what occurred at the start of January 1,

10  2021 to change the nature of the employer of these individuals. To this end, the Court notes that

11  the Parties have not provided any leasing agreement between the Parties for the 2020 time period

12  or any testimony about what the terms of the lease were. That information is both relevant and

13  highly probative of this legal issue.

14          **7.      Concluding Analysis**

15      Plaintiffs have provided a good deal of evidence that the Icicle workers were OBI

16  employees in 2020, when considering the <u>Bonnette</u> factors. But because the Court must construe

17  the facts in the light most favorable to Defendants, it finds that summary judgment cannot be

18  granted on the disputed record before it. On this basis, the Court DENIES the Motion.

19  **D.    Icicle Workers in the Quarantine Class**

20      Although the Court declines to find as a matter of law that OBI was the legal employer of

21  the Icicle workers in 2020, it finds that they should be included in the Quarantine Class and the

22  Class Notice.

23

24

1     Plaintiffs need not prove as a matter of law that the Icicle workers were OBI employees

2  for them to be included in the class. Rather, for purposes of class certification, Plaintiffs need

3  only show by a preponderance of the evidence that this group of individuals are properly part of

4  the class, using "any admissible evidence." Olean Wholesale Grocery Coop., Inc. v. Bumble Bee

5  Foods LLC, 31 F.4th 651, 665 (9th Cir. 2022). Even though there is a dispute of fact on the

6  question of whether OBI was the legal employer of the Icicle workers, the Court finds that

7  Plaintiffs have provided sufficient, admissible evidence to show by a preponderance of the

8  evidence that the Icicle workers were OBI employees in 2020 and that they should be included in

9  the Quarantine Class. There is sufficient evidence in the Rule 30(b)(6) deponent's testimony to

10  demonstrate the economic reality was such that OBI employed the Icicle workers in 2020. The

11  deponent explained that even though the workers were "leased," they provided labor for the

12  benefit OBI. He also testified consistent with the Answer that OBI controlled the terms of all

13  leased workers' quarantine pay and conditions, and that OBI had the authority to terminate

14  leased employees' employment for violating the quarantine. He also testified that OBI had access

15  to leased workers' employment records. These facts are sufficient to meet the Bonnette test, as

16  they show that there was, at a minimum, joint employment of these individuals. And while

17  Defendants have raised disputes of fact on these factors, they do not impede inclusion of the

18  Icicle workers in the class. Rather, the finder of fact must weigh the evidence and determine

19  witness credibility, particularly in light of the changes Ross made to his testimony through the

20  errata.

21     In reaching this conclusion, the Court rejects Defendants' request to re-brief the question

22  of class certification. (See Opp. at 12.) As Plaintiffs point out, when they moved for class

23  certification, they asked that the Icicle workers be included in the certification order. (See Mot. at

24

6; Mot. for Class Cert. (Dkt. No. 53).) And Defendants were given an opportunity to brief this issue. The Court did not expressly rule on the inclusion of the Icicle workers in the classes when it ruled on the Motion for Class Certification. But in considering the proposed class notice, the Court determined that it needed to afford the parties an opportunity to address the issue. The Court asked for summary judgment briefing to allow the parties to provide further evidence on this issue. So while the Court did not ask for further briefing specific to class certification, the parties were afforded the opportunity to provide additional evidence, all of which was relevant to the issue of inclusion of the Icicle workers in the Quarantine Class. The Court finds no need for additional class-certification-specific briefing on this issue given these previous opportunities to brief the issues and provide additional evidence.

Moreover, the additional briefing and evidence confirms that including the Icicle workers in the Quarantine Class does not impact the question commonality and predominance. Given the evidence Plaintiffs have provided, these workers were subject to the same quarantine rules and terms of payment. Their claims present the same common legal question of whether OBI's rules and policies imposed uniform restrictions such that they, and all Quarantine Class members, were due minimum wage for time spent in quarantine. These common issues predominate over individual ones for the same reasons the Court set forth in its Order on Class Certification. And the fact that these individuals may have been initially hired by Icicle does not appear to have any impact on these issues. The Court is also unconvinced that the named Plaintiffs' claims would be atypical relative to those of the Icicle workers. The evidence presented—particularly from the Rule 30(b)(6) deponent and the Answer—is that all leased workers were subject to the same quarantine rules and procedures. Plaintiffs' claims are thus typical of all leased workers' claims, regardless of whether the workers were at Icicle or Ocean Beauty plants in 2020. The Court finds

1   that the inclusion of the Icicle workers in the Quarantine Class and Class Notice is consistent

2   with the evidence presented and the Court's Order on Class Certification.

3          The Court has considered the Parties' briefing on Plaintiffs' proposed classes notices.

4   (See Dkt. Nos. 152, 157, 158.) The Court has revised the proposed Class Notice and it is

5   appended to this Order. The Court revised the notice based on its conclusion as to the Icicle

6   workers and to make it more readable for the public—particularly those for whom English is not

7   a native language. The Court also revised the notice in response to the criticism levied by

8   Defendants that the notice did not accurately reflect the certified class. The Court therefore

9   approves the proposed notice with the revisions made in the Appendix to this Order. Plaintiffs

10  may commence to provide the revised notice (with all placeholders completed) consistent with

11  their proposal for notice distribution. (See Dkt. Nos. 152, 160.)

12                                     **CONCLUSION**

13         The Court finds that a dispute of fact precludes finding as a matter of law that OBI was

14  the legal employer of the Icicle workers in 2020. For this reason, the Court DENIES the Motion

15  for Summary Judgment. But the Court finds that Plaintiffs have provided sufficient evidence to

16  demonstrate that the Quarantine Class should include the Icicle workers starting in June 1, 2020.

17  The Court therefore approves the Class Notice in the form appended to this Order and Plaintiffs

18  may commence to distribute notice.

19         The clerk is ordered to provide copies of this order to all counsel.

20         Dated February 9, 2023.

21

22                                        Marsha J. Pechman
                                          United States Senior District Judge

23

24

ORDER ON MOTION FOR SUMMARY JUDGMENT - 16